733 P.2d 858

**FIRST NATIONAL BANK OF SANTA FE, Plaintiff-Appellee,**

v.

**Dan QUINTANA, et al., Defendant-Appellant.**

**No. 16262.**

Supreme Court of New Mexico.

Feb. 25, 1987.

White, Koch, Kelly & McCarthy, P.A., Larry White, Santa Fe, for plaintiff-appellee.

Robert Suzenski, P.C., Santa Fe, for defendant-appellant.

## OPINION

WALTERS, Justice.

The First National Bank of Santa Fe filed suit for foreclosure against defendants Charles and Desideria Manesa and Rosina and Ernesto Archuleta. The Manesas and Archuletas are not parties to this appeal. The bank subsequently filed an amended complaint for replevin and damages against defendant Dan Quintana. The bank largely prevailed on its claims in the trial court and Quintana appealed. We reverse.

It is necessary to state the facts in some detail in order to understand our disposition of this case. Defendants Manesa entered into an agreement with one Vigil whereby Manesas were to purchase a restaurant and equipment from Vigil. At the time of the agreement, Vigil was leasing the restaurant premises from Quintana. Defendants Manesa and Archuleta obtained a loan from the bank, $59,000 of which was secured by a mortgage on real estate, and by a security agreement and financing statement on the restaurant equipment which Manesas were intending to purchase from Vigil. The bank disbursed the loan on June 16, 1982, but did not file the financing statement on the equipment until October 29, 1982. It does not appear from the record that the security agreement was ever filed. Manesas never purchased the equipment from Vigil.

Before the bank approved the Manesa-Archuleta loan, Vigil requested Quintana to execute an "agreement by landlord" document. Thinking it was a verification that Vigil was current in rent payments, Quintana agreed to sign it. After Vigil turned that document over to the bank, the bank, without the knowledge or approval of Quintana, altered it in such a way as to make any claim by Quintana against property owned by Vigil subordinate to any claim the Bank might ultimately have on the same property.

On June 22, 1982, subsequent to the failure of the Manesa-Vigil purchase agreement, Quintana agreed to buy the restaurant and equipment from Vigil. Quintana, in turn, then agreed to sell the restaurant and equipment to Manesas and Archuletas, and on the same day Quintana entered into a purchase agreement with them to that effect. The purchase price was to be $63,500, and required Manesas and Archuletas to pay $29,000 upon execution of the purchase agreement. Subsequently, on June 25, 1982, Quintana, Manesas, and Archuletas entered into a lease agreement permitting Manesas and Archuletas to lease the premises for the restaurant from Quintana. Manesas paid Quintana $16,000 and Archuletas assigned to Quintana their rights to a $7000 debt owed to them by Manesas. Quintana never received any of the remaining money which was due to him by the Manesas and Archuletas.

The Archuletas and Manesas failed to make first payments either to the bank on the note, or to Quintana in the amounts required by the lease and by the purchase agreement. Quintana immediately gave

notice to Archuletas and Manesas to vacate the premises, and they failed or refused to do so. Quintana then asserted his landlord's lien against the collateral and went into possession of the premises.

The trial court granted partial summary judgment on the bank's claim, further ruling that the bank was entitled, at its election, either to judgment against Quintana for the value of the collateral or for repossession of the collateral. Pursuant to that order, the bank elected to receive the value of the collateral. The trial court dismissed Quintana's counterclaim for wrongful alteration of an instrument, constructive fraud, abuse of process, and unfair trade practices.

■ We do not agree with the bank that its security interest attached to the collateral, thereby placing it in a position superior to that of Quintana. In order for a security interest to attach, there must be an agreement that it attach, value must be given, and the debtor must have rights in the collateral. NMSA 1978, § 55-9-204(1).

The Bank erroneously relies on *Morton Booth Co. v. Tiara Furniture, Inc.,* 564 P.2d 210 (Okla.1977), as authority for its contention that the Manesas and Archuletas acquired "rights in the collateral" sufficient to effectuate attachment.

■ Where the debtor acquires possession of the collateral pursuant to a contract which grants the debtor an interest other than mere possession, the debtor has obtained rights in the collateral so as to allow the security interest to attach. *Morton Booth,* 564 P.2d at 214. But as the court in *Morton Booth* correctly observed, "[M]ere possession of goods is not enough under the Code to demonstrate that the debtor had 'rights' in the collateral." *Id.*

We agree with Quintana that the purchase agreement between Quintana and the Manesas and Archuletas contained a condition precedent which was never performed; therefore, as a matter of law, the contract was never consummated. *See Elephant Butte Resort Marina, Inc. v. Wooldridge,* 102 N.M. 286, 694 P.2d 1351 (1985).

■ Manesas and Archuletas failed to comply with the initial requirements of the contract, *i.e.,* payment of the full $29,000 required under the purchase agreement, which would have given them more than mere possession of the equipment. Naked possession of collateral provides an insufficient acquisition of rights in it upon which the bank's security interest might attach. *Morton Booth Co. v. Tiara Furniture, Inc.* As a matter of law, the bank had neither a valid security interest in the collateral, nor a claim against the property of Quintana, *see* NMSA 1978, § 55-9-204(1), much less a perfected security interest superior to Quintana's claimed landlord's lien. *See Chessport Millworks, Inc. v. Solie,* 86 N.M. 265, 522 P.2d 812 (Ct.App.1974).

Although we agree that the bank's practice of altering the "agreement by landlord" form was unconscionable, in light of the foregoing discussion and Quintana's previous award of damages in another lawsuit, we conclude that the trial court's dismissal of Quintana's counterclaim was not improper.

We reverse and remand for dismissal of the bank's complaint.

SOSA, Senior Justice, and RANSOM, J., concur.