MORTON BOOTH COMPANY,
Appellant,

v.

TIARA FURNITURE, INC., et
al., Appellees,

Bomford, Couch & Wilson, a Business
Trust, Intervenor.

No. 48846.

Supreme Court of Oklahoma.

March 15, 1977.

Rehearing Denied May 24, 1977.

Rucker, Tabor, McBride & Hopkins, Inc., Tulsa, and Charles C. Chesnut, Miami, for appellant.

Wallace & Owens, Inc., Miami, for appellee, Security Bank & Trust Co., Miami, Okl.

Joseph S. Thompson, Miami, for appellee, First Nat. Bank, Miami, Okl.

IRWIN, Justice:

Security Bank and Trust Company of Miami, Oklahoma, and First National Bank of Miami, Oklahoma (Banks), petition for Certiorari to review a decision of the Court of Appeals reversing judgment by the trial court in their favor as secured creditors of Tiara Furniture, Inc., (Tiara). The Court of Appeals held that certain goods in the possession of Tiara at the time it ceased doing business by reason of insolvency were not inventory subject to appellees security interest, but were instead the property of Morton Booth Company (Booth). None of the other parties to the trial court proceedings are represented in this appeal. The issues are concerned exclusively with the relative rights of the Banks and Morton Booth to the disputed goods. The essential facts are not in dispute.

The mainstay of Tiara's business prior to its failure was a contract with Booth for the manufacture and sale of gun cabinets. Under the terms of the contract Booth supplied most of the basic materials, i. e. glass, plywood, locks, hinges, pulls, felt, other hardware and packing cartons. Tiara was to supply the structural lumber and construct the cabinets to Booth's specifications. Upon completion of the cabinets, Tiara packed the cabinets in cartons fabricated from materials supplied by Booth and shipped them to Booth which would pay a reduced price for the finished product.

Tiara was operating under this contract with Booth when it sought long term financing in the form of a loan from the Small Business Administration. Banks were the local lending institutions participating in the loan to Tiara, guaranteed by the SBA. As a part of the loan, Banks required Tiara to execute a security agreement in their favor as to Tiara's present and after acquired inventory. Banks endeavored to perfect their security interest in the inventory by filing financing statements which were proper in form, content and place of filing.

In early 1974, Tiara notified Booth it could no longer continue operations and

that Banks were preparing to enforce their security interests by taking possession of Tiara's inventory. Booth sought to prevent Banks from selling the goods shipped by Booth to Tiara in an action for a temporary restraining order. Banks and Booth stipulated that Booth could remove all goods shipped by it to Tiara paying into court in lieu thereof $50,000.00, and also $10,000.00 for all work in progress. The trial court held a hearing on the proper disposition of the funds deposited for the goods and ruled in favor of Banks. The trial court was of the opinion that the legal effect of the shipment of goods to Tiara for incorporation into cabinets for Booth was a sale. Booth's interest as represented by its reservation of title to the goods was therefore merely a purchase money security interest. Since Booth had not attempted to file a financing statement on the goods, Booth's security interest was unperfected as to those of Banks and for those reasons the trial court entered judgment in favor of Banks. Booth appealed.

The Court of Appeals reversed the trial court and remanded with instructions to enter judgment for Booth. Banks have petitioned for writ of certiorari to review the decision of the Court of Appeals. The Court of Appeals was of the opinion that the facts wholly failed to demonstrate that the security interests of Banks ever attached to the goods claimed by Booth as its property. 12A O.S.1971, § 9–204(1).

■ A central theme to both the opinion of the Court of Appeals and the briefs of Booth is the contention that by reason of Booth's purchase of the goods and shipment to Tiara under reservation of title the security interests of Banks could not attach. Title to goods is of little relative consequence under the Uniform Commercial Code (Code). A deliberate effort was made by the drafters of the Code to avoid defining the rights of parties to goods in terms of who has title, as is evidenced by 12A O.S.1971, § 2–401(1), which states in part:

" * * * Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

■ Booth discounts the applicability of § 2–401(1) to the instant cause for the reason it is a part of Article 2, controlling sales of goods and the rights of buyers and sellers. While Booth's observation is correct, the general policy of the drafters of the Code as concerns the legal effect of a reservation of title applies to all the provisions of the Code relating to transactions in goods. Article 9 specifically provides that where someone other than the debtor is the owner of collateral subject to a creditor's security interest, the owner of the goods is protected from liability for the debt or a deficiency and is subrogated to all the rights the Code provides the debtor. 12A O.S. 1971, § 9–112. The provisions of § 9–112 apply "when a secured party knows that the collateral is owned by a person who is not the debtor, * * *." As the Minnesota Court said in *James Talcott, Inc., v. Franklin National Bank,* 292 Minn. 277, 194 N.W.2d 775, 780, 10 U.C.C.Rep. 11 (1972):

" * * * the draftsmen of the code intended that its provisions should not be circumvented by manipulation of the locus of title. For this reason, consignment sales, conditional sales, and other arrangements or devices whereby title is retained in the seller for a period following possession by the debtor are all treated under Art. 9 as though title had been transferred to the debtor and the creditor-seller had retained only a security interest in the goods."

■ Since the interest of Booth represented by its reservation of title is merely a security interest in the eyes of the law, the true question presented the Court is which secured creditor is entitled to priority over the goods, Banks or Booth? Booth holds a purchase money security interest in the goods because it undertook the obligation to provide Tiara with the goods to be used in

the manufacture of the cabinets. 12A O.S. 1971 § 9–107(b). Under 12A O.S.1971, § 9–312(3), purchase money security interests in inventory collateral have priority over conflicting security interests in the same goods, if:

"(a) the purchase money security interest is perfected at the time the debtor receives possession of the collateral; and (b) any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of the filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items of type of inventory, has received notification of the purchase money security interest before the debtor receives possession of the collateral covered by the purchase money security interest; and (c) such notification states that the person giving notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type."

▮ The evidence is undisputed that Booth took no steps to perfect its security interest by filing. 12A O.S.1971, § 9–304. There is no evidence to indicate that Booth ever gave Banks notice of its claim to the goods. Such steps were evidently deemed unnecessary by Booth for reason of its reliance upon title to the goods. While Booth's misplaced faith in the legal effect of its retention of title caused its security interest to be unperfected, the security interest is none the less valid. An unperfected security interest is a security interest without priority over conflicting security interest rather than one without validity.

▮ Since Booth's security interest has no priority over that purportedly held by Banks, the only way Booth's security interest can be enforced to the exclusion of the interest of Banks is if the security interest of Banks is in some way defective. A security interest cannot attach, come into existence, unless there is agreement that it attach, value for the security interest is given and the debtor has acquired some

"rights in the collateral." 12A O.S.1971, § 9–204(1). The term "agreement" means the bargain of the parties [12A O.S.1971, § 1–201(3)] and is used in § 9–204 rather than "security agreement", which has reference to a written contract for a security interest, because not all security interests need be based on a written security agreement. 12A O.S.1971, § 9–203(1).

Booth argues and the Court of Appeals held that there was no "agreement" between Banks and Tiara that the security interest of Banks attach "to the raw materials owned by Morton Booth." In support of this position Booth argues that both the security agreement and the financing statement executed by Tiara in favor of Banks describes the collateral as "inventory" and the raw materials "furnished" by Booth were never a part of Tiara's assets or inventory. Booth speaks of inventory in its accounting sense as if it were synonymous with "inventory" as a term of art when used in the Code. This is not necessarily the case. The Code defines "inventory" as being goods "held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business." 12A O.S.1971, § 9–109(4). The goods in question were definitely "raw materials, work in process or materials used" in Tiara's business. Whether the raw materials supplied by Booth ever appeared on Tiara's books as "assets" or "inventory" for any purpose has no bearing on whether they are inventory for the purposes of the Code.

By stating that there must be "agreement that it [the security interest] attach", § 9–204(1), is simply requiring that the bargain of the parties from which the security interest arises address itself to a specific property or class of property, in this case "inventory". *Barth Brothers v. Billings,* 68 Wis.2d 80, 227 N.W.2d 673 (1975); *Marine Midland Bank-Eastern National Association v. Conerty Pontiac-Buick, Inc.,* 77 Misc.2d 311, 352 N.Y.S.2d 953 (1974). The security agreement between Banks and Tiara in-

cludes as collateral Tiara's inventory. Booth's goods were a part of that inventory.

The provisions of § 9–204(1) require that value be given for the security interest. The Court of Appeals held from the evidence that "a value of the Morton Booth raw materials by itself or as a part of a total of Tiara's assets, was never given by Tiara to the banks." The provision requiring as a precondition to the attachment of a security interest the giving of value is intended to insure that the debtor who gives the security interest has received some consideration in return for the substantial rights transferred to the secured party. A person gives value within the meaning of the Code by extending credit or making a binding commitment to extend credit. 12A O.S.1971 § 1–201(44)(a). The worth of the value given need only be consideration sufficient to support a simple contract. 12A O.S.1971, § 1–201(44)(d). Banks lent Tiara in excess of $100,000.00 as consideration for a security interest in Tiara's inventory. Since Booth's goods were a part of Tiara's inventory, value was given for a security interest in those goods.

■■■ Finally, the Court of Appeals upheld Booth's contention that the evidence failed to show that Tiara acquired any "rights in the collateral." Booth cites *Cain v. Country Club Delicatessen of Saybrook, Inc.,* 25 Conn.Sup. 327, 203 A.2d 441 (1964), for the proposition that mere possession of goods is not enough under the Code to demonstrate that the debtor had "rights" in the collateral. We agree with the general proposition. The provisions of Article 9 were never intended to give rise to a security interest where the debtor was, for example, a mere gratuitous bailee. The cases generally hold, however, that where a debtor gains possession of collateral pursuant to an agreement endowing him with any interest other than naked possession, the debtor has acquired such rights as would allow the security interest to attach. *In re Samuels & Co., Inc.: Stowers v. Mahon,* 526 F.2d 1238 (5th Cir. 1976); *First National Bank of Elkhart County v. Smoker,* Ind.Ct.App., 11

U.C.C.Rep. 10 (1972); *Evans Products Co. v. Jorgensen,* 245 Or. 362, 421 P.2d 978 (1966). Tiara had substantial rights in the materials supplied by Booth other than mere possession. Primary among Tiara's rights was the right to incorporate the materials into a product for sale. The purpose behind Booth's contract to provide the goods was to control the cost and quality of the finished product. Under the contract Tiara had the right to use the materials provided in the manufacture of gun cabinets, and sell the finished product to Booth. Also, Tiara had substantial legal rights in the goods in its possession. Tiara had a security interest of its own in the materials Booth provided and in Tiara's possession for the payment of accounts due under the contract to manufacture and sell the gun cabinets. 12A O.S.1971 §§ 2–711(3) and 9–113. The right of a debtor to enforce a security interest in his favor over goods in the debtor's possession has been held to be sufficient rights in the collateral to allow a creditor's security interest to attach. *In re Samuels & Co., Inc.: Stowers v. Mahon, supra.*

It was the judgment of the trial court that Banks and Booth had security interests in the goods. The trial court also ruled that Booth's security interest was unperfected and therefore inferior to the perfected security interests of Banks. The judgment of the trial court was correct as a matter of law and should have been affirmed.

Certiorari granted; Opinion of the Court of Appeals vacated; and Judgment of the trial court affirmed.

HODGES, C. J., LAVENDER, V. C. J., and BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

WILLIAMS, J., dissents.