**Ray ROHWEDER, Appellant,**

v.

**ABERDEEN PRODUCTION CREDIT ASSOCIATION, Appellee.**

No. 84–1749.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1984.

Decided June 12, 1985.

**110**

James M. Cremer, Aberdeen, S.D., for appellant.

Carlyle Richards, Aberdeen, S.D., for appellee.

Before LAY, Chief Judge, BRIGHT and BOWMAN, Circuit Judges.

BRIGHT, Circuit Judge.

Ray Rohweder appeals from a judgment of dismissal upon a directed verdict in his action against the Aberdeen Production Credit Association (PCA) for the conversion of cattle. For reversal, Rohweder argues that the district court erred by directing a verdict on the basis that PCA's perfected security interest in cattle owned by Bellman Farms, Inc. attached to the cattle claimed by Rohweder in these proceedings. Rohweder also argues that, on remand, he should be permitted to present his claims for exemplary damages. We reverse the judgment of dismissal and remand for further proceedings.

## I. BACKGROUND.

In the spring of 1981, Rohweder owned approximately 1,200 cattle, located on rented pastures near LeMars, Iowa. He was preparing to move the cattle to summer pastures in Nebraska when Charles Bellman contacted him and offered to purchase some of his cows for $625 per head. Rohweder met Bellman in Iowa and they identified certain cows that Bellman wished to buy. When Bellman could not obtain financing to complete the purchase, the parties entered into an alternative transaction whereby Bellman received possession of the cows with an option to purchase them at any time during the coming year for $625 each. Rohweder testified that the transaction was a "share agreement," not uncommon in the cattle business, under which Bellman would breed the cows with his bulls, calve them out, and pasture and care for all of the cows and calves. For his services, Bellman would receive forty percent of the calf crop. Rohweder remained the owner of the cows and received the rest of the calves.

Pursuant to this arrangement, Rohweder delivered 710 cows to pastures Bellman had rented in Nebraska. Although most of the cows bore Rohweder's brand, 300 to 350 bore the brand of one Dan Genre. Rohweder had purchased these cows from Genre and possessed a bill of sale for them.

It appears that when the cows arrived in Nebraska, Bellman pastured them separately from some of his cattle which were also in the area. However, it later became necessary to move all of the cattle into a common pasture. At approximately the

same time, Bellman branded some of the Rohweder cows with a Bellman brand and affixed Bellman ear tags to all of the calves. Rohweder learned about the branding in May 1981 and reprimanded Bellman for it, but he took no further action.

The pastures in Nebraska did not produce as much grass as expected and, by the summer of 1981, the cattle lacked adequate forage. After informing Rohweder of the problem, Bellman moved the cattle to several pastures in South Dakota. Bellman paid transportation costs for all the cattle, and, upon arrival in South Dakota, the Rohweder cows and their calves were again commingled with the Bellman cattle. In South Dakota, Bellman continued to experience difficulty feeding all the cows. He discussed the situation with Rohweder and Rohweder instructed him to sell off some of the older and poorer cows. Bellman apparently exercised absolute discretion regarding how many and which cows to sell, and chose the sale barns where they were sold. In some cases, the sale barns made payment directly to Rohweder, in others the barn paid Bellman and Bellman paid Rohweder.

In 1978 and 1979, Bellman had obtained loans from the PCA in order to increase the size of his herd. To secure these loans, Bellman Farms, Inc. or Ace Cattle Company, another Bellman-owned corporation, executed security agreements with the PCA. The district court determined that these security agreements covered after-acquired livestock and that the PCA had properly filed financing statements in order to perfect a security interest in the livestock.

On December 1, 1981, Bellman Farms, Inc., filed a Chapter 11 bankruptcy petition. When Rohweder learned about the filing and asked Bellman about the cows and calves, Bellman assured him that the Rohweder cattle were "not in the bankruptcy." Despite this assurance, Rohweder decided to remove the animals from Bellman's property. On January 5, 1982, he arrived at Bellman's ranch accompanied by ten cowboys, intending to move the cattle to another ranch. At the ranch, they met a loan officer from the PCA, Joe Senger. Senger and the local county sheriff refused to let Rohweder move the cattle. Rohweder arranged to have food delivered for the cattle and, after obtaining Senger's promise that the cattle would not be moved without notice, returned to his home in North Dakota. A few hours later, 684 calves were hauled from Bellman's ranch to a slaughterhouse. The next day, 485 cows were hauled away. These cattle were moved at Senger's direction and Senger did not notify Rohweder. Proceeds from the sale of the cattle were deposited in the Bellman Farms bankruptcy account.

Rohweder commenced this action against the PCA for conversion of his cattle. At the close of Rohweder's evidence, the PCA moved for a directed verdict on the grounds that its perfected security interest in Bellman's livestock had attached to the Rohweder cattle. Rohweder opposed the motion on the basis that Bellman held the cattle as a mere bailee, arguing that a bailee does not acquire sufficient rights in bailed property to support the attachment of a security interest. The district court ruled that Bellman had sufficient rights for the attachment of a security interest in that he exercised significant control over the cattle and he had an option to purchase them. Accordingly, the court held that PCA's security interest had attached to the cattle and granted PCA's motion to dismiss.

## II. DISCUSSION.

### A. Attachment of PCA's Security Interest to Rohweder's Cattle

■ In reviewing a directed verdict, we consider the evidence in the light most favorable to the non-moving party and give him the benefit of all reasonable inferences that may be drawn from that evidence. *Villanueva v. George*, 659 F.2d 851, 852–53 (8th Cir.1981). Furthermore, we note that in this case the district court expressly did not decide whether or not the arrangement between Rohweder and Bellman actually constituted a contract for sale. Because

the evidence in the record could support the conclusion that the arrangement was a genuine bailment, we will, for the purposes of this appeal, treat it as a bailment. In addition to the alleged bailment, Bellman had an option to purchase the cows for $625 each.

The district court identified two cases which it thought supported its holding that a bailee could acquire sufficient rights in property to support the attachment of a security interest: *Kinetics Technology International Corp. v. Fourth National Bank*, 705 F.2d 396 (10th Cir.1983), and *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210 (Okla.1977). In both cases, a debtor contracted to manufacture goods out of raw materials supplied by the purchaser. The debtor became insolvent before completion of the contract and its secured creditor took possession of the materials as part of the debtor's inventory. The purchaser sought to recover the materials, arguing that the debtor held them as a mere bailee, and therefore the creditor's security interest could not attach. In each case, the court ruled that the creditor's security interest had attached to the raw materials.

While both of these cases present facts somewhat similar to those in the case now before us, they are not analogous because neither dealt with a true bailment. In *Morton Booth*, the trial court determined that the transfer of raw materials from the purchaser to the debtor constituted a *sale*, not a bailment. 564 P.2d at 212. This distinction is vital because, under section 2–401(1) of the Uniform Commercial Code (U.C.C.), reservation of title to goods shipped under a contract for sale is limited to the reservation of a security interest. Thus, once a court determines that an alleged bailment actually constitutes a sale, the party in possession of the goods has a propriety interest in them as a matter of law.

*Kinetics* was a diversity case applying Oklahoma law. Because the facts were so similar to *Morton Booth*, the Tenth Circuit relied on that case as the Oklahoma Supreme Court's interpretation of Oklahoma law and rejected the purchaser's "bailment" argument. 705 F.2d at 399–400. In addition, the court noted that the arrangement between the debtor and purchaser actually constituted a means of financing the debtor's operation, with the purchaser supplying capital in the form of raw materials instead of cash. *Id.* The court suggested that the "bailment" was actually a security interest governed by article 9 of the U.C.C. because it was intended to secure performance under the financing arrangement. 705 F.2d at 400 n. 3. *See* U.C.C. § 9–102(1); U.C.C. § 9–102 comment 1.

■■■ Unlike *Morton Booth* and *Kinetics*, taking the evidence in this case most favorable to Rohweder, the transaction can be found to be a true bailment in which Bellman's interest is that of a bailee. We are aware of no cases in which the interest of a genuine bailee was sufficient to support the attachment of a security interest and PCA has cited none. On the contrary, the cases have concluded that the security interest of a bailee's creditor does not attach to goods which are the subject of a bailment. *In re Sitkin Smelting & Refining, Inc.*, 639 F.2d 1213, 1216 (5th Cir. 1981); *Chrysler Corp. v. Adamatic, Inc.*, 59 Wis.2d 219, 208 N.W.2d 97, 104–05 (1973). Furthermore, mere possession of the collateral or an unexercised option to purchase does not give the debtor sufficient rights for a security interest to attach. *Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 707 (10th Cir.1982); *see* 4 R. Anderson, *Anderson on the Uniform Commercial Code*, § 9–204:7, at 179 (2d ed. 1971). Accordingly, we hold that the district court erred in concluding as a matter of law that Bellman had sufficient rights in Rohweder's cattle for the PCA's security interest to attach.

■■■ In its brief, PCA argues that Rohweder is estopped from denying the validity of PCA's security interest. We decline to affirm on this basis for two reasons. First, the assertion of an estoppel is governed by state law and the district court

did not address South Dakota's law on this issue. Second, we note that in general the party asserting an estoppel must have actually relied on some words or conduct of the one to be estopped, and must be without convenient access to knowledge contrary to the facts on which he relied. *In re Pubs, Inc. of Champaign*, 618 F.2d 432, 438 (7th Cir.1980). The district court made no determination whether PCA took any action in reliance on Bellman's possession of the cattle. The estoppel argument may fail if it appears that PCA did not advance any additional credit to Bellman after Bellman acquired possession of the Rohweder cattle. A question also exists as to whether the presence of Rohweder's and Genre's brands on the cattle gave PCA "convenient access" to knowledge that Bellman did not own them.

We conclude that the directed verdict must be set aside, and we reverse the judgment of the district court. At trial, the burden is on Rohweder to show that he actually owned the cattle in question. Evidence that the cattle bore Rohweder's brand, or evidence of the Genre brand plus a bill of sale from Genre to Rohweder, would constitute prima facie proof of ownership. Once Rohweder makes his prima facie showing, the burden shifts to the PCA to demonstrate that Bellman possessed sufficient rights in the cattle for its security interest to attach. The crucial question in this regard is the parties' intent. If Rohweder intended to make a conditional sale when he delivered the cows to Bellman, he retained only a security interest and Bellman had sufficient rights for PCA's security interest to attach. On the other hand, if the parties intended to create a bailment, with Rohweder retaining complete ownership of the cows and relinquishing only possession, Bellman would not have sufficient rights for attachment of PCA's lien and, in the absence of an estoppel, Rohweder should prevail. While the factors of control over the cattle, including the right of sale, and the option to purchase do not necessarily constitute "rights in collateral," they are relevant evidence for the jury in determining the parties' intent to transfer an ownership interest to Bellman.

Finally, we must consider whether Rohweder is entitled to recover for the sale of the calves. If the jury determines that the transaction constituted a bailment, then Bellman only had rights to forty percent of the calves, and Rohweder should recover sixty percent of the proceeds from calves that were born of his cows. If the transaction were a sale, Bellman obtained an ownership interest in all of the calves and Rohweder's claims would be subordinate to those of the PCA under the latter's perfected security agreement with Bellman Farms.

**B. Exemplary Damages.**

In his complaint, Rohweder sought punitive damages, and treble damages pursuant to S.D. Codified Laws Ann. § 22–34–2 (1980). Prior to trial, the district court granted PCA's motion to strike both punitive and treble damages.

■ The ¹United States, its agencies and instrumentalities, cannot be held liable for punitive damages in the absence of express statutory authorization. ⁻ *In re Sparkman*, 703 F.2d 1097, 1100 (9th Cir. 1983). The PCA is an instrumentality of the United States. 12 U.S.C. § 2091 (1982). Rohweder argues that the "sue and be sued" clause in the enabling legislation for Production Credit Associations constitutes express authorization for punitive damage awards. This argument has been rejected by the Ninth Circuit in *Sparkman. Id.* at 1101. Furthermore, Rohweder has not identified any case holding that a "sue and be sued" clause authorizes punitive damages. Accordingly, we affirm the district court's decision to strike punitive damages.

■ The district court refused to permit treble damages under SDCL 22–34–2 because it concluded that criminal prosecution under SDCL 22–34–1 was a prerequisite to treble damage liability. We agree. *See K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 532 (S.D.1983). Therefore, we also affirm the district court's decision to strike treble damages.

**III. CONCLUSION.**

We reverse the judgment of the district court and remand for trial by jury in a manner consistent with this opinion.