**BARWELL, INC., Plaintiff,**

v.

**FIRST OF AMERICA BANK–LaPORTE, N.A., Defendant.**

**No. S90–492.**

United States District Court,
N.D. Indiana,
South Bend Division.

July 26, 1991.

Nickolas P. Andreeff and James R. King of Amer Cunningham Brennan Co., L.P.A., Akron, Ohio, Patricia E. Primmer of May, Oberfell & Lorber, South Bend, Ind., for plaintiff.

Lewis C. Laderer, Jr. and Rebecca Hoyt Fischer of Kramer, Butler, Simeri, Konopa & Laderer, South Bend, Ind., for defendant.

**MEMORANDUM AND ORDER**

ROBIN D. PIERCE, United States Magistrate Judge.*

This case is before the court on the parties' cross-motions for summary judgment. In February, 1989, plaintiff, Barwell, Inc., delivered a machine to McMann Golf Ball Company, Inc. Barwell did not file a financing statement to perfect its interest in the equipment. McMann immediately implemented the machine in its manufacturing operations. In March, 1989, defendant First of America Bank–LaPorte, N.A., loaned McMann $350,000 to purchase equipment for its business and perfected a security interest in McMann's equipment. Later that year, McMann filed for bankruptcy under Chapter 11. Cross-motions for summary judgment filed by Barwell and First of America require the court to decide, on essentially undisputed facts, whether the machine delivered by Barwell was the subject of a bailment or a sale. If it was a bailment, Barwell prevails. If it was a sale, First of America's perfected security interest entitles it to priority, and thus to all proceeds from the sale. The court concludes that the machine was the

* The case was referred to the Magistrate Judge by Chief United States District Judge Allen Sharp with the consent of the parties.

subject of a sale. Therefore, since the material facts in the case are not in dispute, First of America's motion for summary judgment must be granted and Barwell's motion must be denied. Following a detailed discussion of the factual background of the case and the summary judgment standard, the court will spell out the reasoning underlying its decision.

### Background

On January 3, 1989, Barwell, Inc. submitted a quotation to McMann Golf Ball Company, Inc. for the price of a Rebuilt Barwell Precision Preformer to be used in McMann's golf ball manufacturing operations. Barwell's quoted price for the Preformer was $52,650. (Plaintiff's Exhibit 4, Defendant's Exhibit E). In a letter attached to the quotation, Barwell's President, Dean Reusser, also informed McMann that the monthly rate for a five-year lease of the equipment would be $1,226 per month. In addition, Reusser quoted a figure of $1,750 per month for a three-year lease. At the end of the lease period, McMann would have the option to buy the machine for $1.00. (Plaintiff's Exhibit 4).

On January 16, 1989, McMann issued a purchase order for the Preformer. The total price of the unit and its accessories came to $55,184.58. The following day McMann wrote a check for $3,000 as a "deposit" on the equipment. (Plaintiff's Exhibit 5, Defendant's Exhibit F). McMann's former President, Peter Mandich, characterizes the $3,000 deposit as a "down payment" on the Preformer. (Mandich Affidavit, p. 2). Dean Reusser, Barwell's president, attests that a 50 percent deposit is normally required under Barwell's credit terms for a sale. Further, he states that he was not willing to sell the Preformer to McMann under these terms. (Reusser Affidavit, p. 2). Ronald Cordeau, McMann's former vice-president, testifies that he does not believe that Reusser informed him of Barwell's requirement of a 50 percent deposit as a condition of sale. He does say that Reusser told him that Barwell's ordinary credit terms required the balance on a purchase to be paid within 30 days of the delivery of the equipment. (Cordeau Deposition, p. 120).

Cordeau does not recall offering to pay Barwell directly for the Preformer. He states that the parties understood that he would attempt to locate a leasing company who would then purchase the equipment from Barwell and lease it back to McMann. (Cordeau Deposition, pp. 108, 110; Cordeau Affidavit, p. 1). Cordeau, however, also states that it was McMann's original intention upon receiving the quote from Barwell to purchase the Preformer. Further, he agreed with the proposition that whether McMann obtained the Preformer through a direct purchase or ultimately from a leasing company, "one way or the other, McMann was buying this equipment." (Cordeau Deposition, pp. 50–51).

Dean Reusser, Barwell's president, says that he never agreed to sell the Preformer directly to McMann, and that McMann never offered to pay the purchase price of the Preformer. Further, he states that all of his discussions with Cordeau centered around a leasing arrangement, whereby Barwell would sell the Preformer to a leasing company. (Reusser Affidavit, p. 2). Nevertheless, on January 20, 1989, Barwell issued an acknowledgment of McMann's purchase order for the Preformer. Following a heading marked "Terms," Barwell typed "50% deposit with official order, balance net 30 days." The total price on the transaction was listed as $55,184.58, with a $3,000 deposit credited to McMann, leaving a balance due of $52,184.58. (Defendant's Exhibit H).

Barwell shipped the Preformer to McMann on February 20, 1989. On February 21, Barwell sent McMann an invoice stating a balance due on the Preformer of $52,150.38. (Defendant's Exhibit I, p. 1.) At no time did Barwell file U.C.C. financing statements with respect to the Preformer. Immediately afterward, McMann began using the machine in its golf ball manufacturing processes. (Mandich Affidavit, p. 3). On March 1, 1989, McMann and First of America Bank entered into a loan agreement providing McMann with $350,000 to purchase equipment to be used in its busi-

ness. In conjunction with the loan agreement, McMann signed a security agreement giving First of America rights in its presently owned and after-acquired property.

First of America perfected its security interest in McMann's equipment by timely filing a U.C.C. financing statement with the Indiana Secretary of State on March 2, 1989, and with the Recorder of LaPorte County on March 3. First of America's Senior Vice President, Thomas H. Edwards, states that the $3,000 which McMann advanced to Barwell as a deposit on the Preformer was reimbursed from the proceeds of the term loan which First of America extended to McMann. (Edwards Affidavit, p. 2.).

Throughout the month of March, McMann continued to use the Preformer in its daily operations, but made no further payment on its account with Barwell. On March 30, 1989, Barwell's Controller, Nancy DeGroff, sent a letter to McMann directed to the attention of "Accounts Payable." This letter showed a balance due of $52,-187.93 on McMann's account with Barwell. (Defendant's Exhibit K). When McMann failed to make payment, Barwell sent additional letters on June 23, 1989 and August 2, 1989, demanding full payment of the balance due on the account. (Defendant's Exhibits L and M). McMann continued to offer no remuneration to Barwell.

On August 23, 1989, McMann filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code. On September 19, 1989, Barwell sent a letter to McMann demanding the return of its equipment, because of its failure to make an "arrangement with a leasing company who would take title and make payment in full to Barwell." (Plaintiff's Exhibit 6). On November 22, 1989, Barwell and First of America executed a written agreement for relief from stay and abandonment of the Preformer, with the condition that the proceeds from the sale of the equipment be deposited in an interest bearing escrow account with First Source Bank. The proceeds from the sale of the Preformer were $54,000. Ultimately, on September 17, 1990, the Bankruptcy Court determined that the abandonment of the Preformer from the bankruptcy estate deprived it of jurisdiction to decide whether Barwell or First of America was entitled to the proceeds from the sale.

On October 4, 1990, Barwell filed a complaint for declaratory judgment in this court. First of America filed a motion for summary judgment on January 3, 1991. Barwell filed its own motion for summary judgment on January 16, 1991. For the reasons below, the court concludes that defendant First of America's motion for summary judgment should be granted and that the motion of plaintiff Barwell should be denied.

### Summary Judgment Standard

In a summary judgment motion, the movant must first demonstrate, by way of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that (1) no genuine issues of material fact exist for trial, and (2) the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985). If the motion's opponent would bear the burden of proof at trial on the matter that forms the basis of the summary judgment motion, the burden of proof shifts to the motion's opponent if the movant makes its initial showing, and the motion's opponent must come forth and produce affidavits, depositions, or other admissible documentation to show what facts are actually in dispute. *Celotex*, 477 U.S. 317, 106 S.Ct. 2548; *Valentine v. Joliet Township High Sch. Dist. No. 204*, 802 F.2d 981 (7th Cir.1986); *Klein v. Trustees of Indiana University*, 766 F.2d 275, 283 (7th Cir.1985). Summary judgment should be granted only if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260 (7th Cir.1986); *Munson*, 754 F.2d at 690; *Weit v. Continental Illinois National Bank & Trust Co.*, 641 F.2d 457,

461 (7th Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982).

When the parties do not dispute the factual basis of a motion for summary judgment, the reviewing court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dept. of Air Force,* 804 F.2d 428 (7th Cir.1986).

When the parties dispute the facts, they must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States,* 803 F.2d 1421 (7th Cir.1986); *Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir.1985). Any permissible reasonable inferences from the documentary evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Munson,* 754 F.2d at 690; *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir.1972). A party need not try its case by affidavit, but it must set forth some facts from which the court can reasonably infer that the party would be able to produce some evidence at trial to support its theory. *Matter of Morris Paint and Varnish Co.,* 773 F.2d 130 (7th Cir.1985). The non-moving party must show that the disputed fact is material, that is, outcome-determinative under the applicable law. *Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Ass'n,* 806 F.2d 146 (7th Cir. 1986).

*Analysis*

In a nutshell, Barwell's argument is that a sale of the Preformer to McMann never took place. Instead, Barwell characterizes the transaction as a bailment, with the understanding that McMann would find a third-party purchaser to buy the equipment and then lease it back to McMann. First of America, on the other hand, claims that it is entitled to the proceeds from the sale of the Preformer because of the "first in time, first in line" tenet of secured transactions law, as enunciated in IND.CODE 26-1-9-312(5). First of America argues that since it properly perfected its security interest in McMann's after-acquired equipment, and because Barwell failed to file a financing statement with respect to the sale or lease of the equipment, it is entitled to the proceeds from the sale of the Preformer. First of America disputes Barwell's contention that the transaction involving the Preformer was a bailment. In the alternative, it argues that even if the transaction was a bailment, its perfected security interest would still prevail against Barwell's interest as a bailor.

The crucial question in this case concerns the nature and effect of the transaction which took place between Barwell and McMann. First, was Barwell's transfer of the Preformer to McMann a sale, a lease, or a bailment? Second, depending upon the nature of the transfer, did First of America's security interest attach to the equipment following its delivery to McMann? Finally, if the transaction was indeed a sale, does First of America's or Barwell's security interest in the equipment prevail?

The written documentation executed in connection with the transaction between Barwell and McMann was limited. However, it is clear that on January 16, 1989, McMann sent Barwell a purchase order for the equipment, with Ronald Cordeau signing his name as purchasing agent. The purchase order showed a total balance on the equipment of $55,184.58, less $3,000.00 which McMann paid as a deposit or down payment. Barwell delivered the Preformer to McMann, accompanied by an invoice

showing the balance due. Ultimately, when payments on the equipment from McMann were not forthcoming, Barwell sent several collection letters demanding payment in full. All of these factors are objective indicia which support the conclusion that the transaction between Barwell and McMann was not a true bailment or a leasing arrangement, but rather, a sale subject to the provisions of U.C.C. Article 9.

In its brief, Barwell cites *Rohweder v. Aberdeen Production Credit Association,* 765 F.2d 109 (8th Cir.1985) in order to bolster its claim that the transaction involved in the instant case was a bailment and therefore not subject to First of America's perfected security interest. The *Rohweder* case stands for the principle that, where there is a transaction involving a genuine bailee, there can be no attachment of a security interest on the part of a third party creditor. Barwell stresses the court's statement that "mere possession of the collateral or an unexercised option to purchase does not give the debtor sufficient rights for a security interest to attach." 765 F.2d at 112.

The court in *Rohweder,* however, was careful to distinguish between true bailments and those transactions which purport to be bailments but are actually sales. The court cited two cases, *Kinetics Technology International Corp. v. Fourth National Bank,* 705 F.2d 396 (10th Cir.1983), and *Morton Booth Co. v. Tiara Furniture, Inc.,* 564 P.2d 210 (Okla.1977), in which it was determined that the transfer of collateral between a supplier and a debtor constituted a sale and not a genuine bailment. In both cases, the courts held that, because a debtor had sufficient control over the collateral in his possession, a lender's security interest had attached to the collateral. The courts stated that the necessary control exists "where a debtor gains possession of collateral pursuant to an agreement endowing him with any interest other than naked possession." 705 F.2d at 399, quoting 564 P.2d at 214. According to the Tenth Circuit, this definition of "control" (as distinguished from a mere bailment)

strongly supports the Article Nine purpose of promoting certainty in commercial loan transactions. Otherwise, if a debtor received collateral from a third party under an agreement giving the debtor authority to exercise any outward indicia or manifestations of ownership or control, a would-be creditor could easily be misled into making a loan under an ineffective security agreement. 705 F.2d at 399. The *Rohweder* court, commenting on these decisions, conceded that "once a court determines that an alleged bailment constitutes a sale, the party in possession of the goods has a proprietary interest in them as a matter of law." 765 F.2d at 112.

In the case at bar, it is clear that a true bailment did not exist. McMann did much more than "nakedly possess" the collateral in question. Rather, it immediately implemented the Preformer in its golf ball manufacturing operations, and continued to use it until filing bankruptcy. Such an extensive utilization of the equipment certainly indicates a substantial degree of control or authority on McMann's part. Furthermore, McMann used proceeds out of its loan from First of America to pay its $3,000 deposit on the Preformer. These proceeds were obtained pursuant to an agreement between McMann and First of America that the loan would be used to *purchase* all of the equipment to be used in its business. (Edwards Affidavit, p. 2).

The stipulation that McMann would purchase all necessary equipment was consonant with the business plan McMann submitted to First of America during their loan negotiations. This business plan called for the purchase of all equipment needed to manufacture golf balls, and did not provide for the leasing of any equipment. (Mandich Affidavit, p. 2). There is no doubt that McMann's possession and use of the Preformer exhibited more than enough indicia of control to take it out of the realm of bailments and into the realm of sales. Consequently, First of America's security interest in McMann's after-acquired equipment did indeed attach, and the bank's perfected interest takes priority

over Barwell's unperfected interest in the Preformer.

The testimony regarding the negotiations between McMann and Barwell indicates that there was never any question that Barwell intended to sell the Preformer. The only unclear aspect of the verbal negotiations was whether McMann itself would pay for the equipment, or whether a third party would pay for the equipment and then lease it back to McMann. The written documentation concerning the transaction strongly indicates a sale of the Preformer to McMann by Barwell. It severely strains credulity that an equipment manufacturer as well-versed in sales transactions as Barwell would allow a newly-formed company such as McMann to possess and use an expensive piece of equipment simply on a dubious understanding that McMann would try to find a buyer for it at some indefinite point in the future.

What is more likely, and what the objective evidence indicates, is that Barwell intended a sale of the Preformer to McMann; the only matter not explicitly agreed upon was where the financing for the purchase would come from. Apparently, Barwell was content to rely on a $3,000 deposit or down payment from McMann as sufficient consideration for delivering the equipment to McMann. Barwell then left it up to McMann to work out the details for the financing of the sale. When several months passed and Barwell learned that McMann had failed to procure a buyer for the Preformer, Barwell's patience ran out, and the company began sending McMann collection letters demanding payment in full.

Barwell's collection action is the most revealing piece of evidence before the court, for it shows that Barwell understood that a sale of the equipment had indeed been made, and it was holding McMann ultimately responsible for payment on the Preformer. Barwell could easily have protected its interest in the Preformer by filing a U.C.C. financing statement to perfect its purchase money security interest. It failed to do so, however, and the court will not accept Barwell's attempt to rectify its oversight by recharacterizing the nature of the transaction involving the Preformer.

Defendant First of America cites *Matter of Samuels and Company, Inc.*, 526 F.2d 1238 (5th Cir.1976) to support its position that its perfected security interest in McMann's equipment takes priority over Barwell's unperfected security interest. In *Samuels*, the court held that the interest of an unpaid cash seller who fails to perfect his interest in goods already delivered to a buyer is subordinate to the interest of a holder of a perfected security interest in those same goods. This holding is in accord with IND.CODE 26-1-9-312(5)(a), which provides that

> Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

There is no disputing the fact that First of America filed the appropriate financing statements in order to perfect its security interest in McMann's equipment. Neither can the fact be disputed that Barwell failed to file any financing statement whatsoever in order to perfect its interest in the Preformer which it had relinquished to McMann. Therefore, it is clear that under the "first in time, first in line," credo which the U.C.C., Indiana law, and case law mandate, First of America's security interest in the Preformer takes precedence over Barwell's unperfected interest.

The fact that Barwell retained in its possession the title to the Preformer does not change the result under the law. IND. CODE 26-1-2-401(1) provides that "any retention or reservation by the seller of the title in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." The Indiana Court of Appeals has upheld this proposition in several cases, among them *National Bank and Trust Company of South Bend v. Moody Ford, Inc.*, 149 Ind.App. 479, 273 N.E.2d 757 (1971), and *First National*

**1318**

*Bank of Elkhart County v. Smoker,* 153 Ind.App. 71, 286 N.E.2d 203 (1972).

In the *Samuels* case, the Fifth Circuit endorsed the U.C.C. provision concerning reservation of title by reasoning that such a provision does not prejudice the seller, because the seller may fully protect himself against all other secured creditors simply by filing a purchase money financing statement. With regard to this filing requirement, the court observed that "[t]he procedure is not unduly complex or cumbersome. But whether cumbersome or not, a seller who chooses to ignore its provisions takes a calculated risk that a loss will result." 526 F.2d at 1248.

Barwell, by its failure to file such a financing statement to fully protect its interest in the Preformer, took just such a risk (whether calculated or otherwise) and the law mandates that it must suffer such a loss. The transaction between Barwell and McMann involving the Preformer must be characterized as a sale. There is nothing in the record before the court, either in the affidavits and depositions concerning the pre-transaction negotiations, or in the documentation concerning the transaction, which indicates that a lease or a bailment agreement was consummated between Barwell and McMann. Defendant First of America properly perfected its security interest in the Preformer, McMann's after-acquired equipment. Plaintiff Barwell failed to file a financing statement perfecting its purchase money security interest in the Preformer. Thus, pursuant to IND. CODE 26-1-9-312(5)(a), First of America's perfected security interest in the Preformer takes priority over Barwell's unperfected security interest in the equipment. As a result, First of America is entitled to all proceeds from the sale of the Preformer as are now held in an escrow account with First Source Bank.

Defendant's motion for summary judgment is hereby GRANTED, and plaintiff's motion for summary judgment is hereby DENIED. The Clerk is directed to enter final judgment in favor of defendant/counter-claimant, First of America Bank–LaPorte, N.A., and against plaintiff/counter-

defendant, Barwell, Inc., on the counter-claim of First of America Bank–LaPorte, N.A., declaring as follows:

1. That First of America Bank–LaPorte, N.A. has a properly perfected security interest in the proceeds of the Rebuilt Barwell Precision Preformer described in the court's Memorandum and Order of July 26, 1991, which security interest is superior to, and has priority over, the interest of Barwell, Inc.; and

2. That First of America Bank–LaPorte, N.A. is entitled to all funds representing the net proceeds of the sale of the aforesaid Preformer, plus interest thereon from the date of such sale to the present.

SO ORDERED.