**STATE BANK OF YOUNG AMERICA, Appellant,**

v.

**James P. WAGENER, Respondent.**

**No. CX–91–1426.**

Court of Appeals of Minnesota.

Jan. 14, 1992.

Review Denied March 10, 1992.

Facts."

Robert A. Nicklaus, Nicklaus Law Firm, Chaska, for appellant.

Thomas J. O'Connor, Burnsville, for respondent.

Considered and decided by FORSBERG, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

FORSBERG, Judge

Appellant challenges the trial court's dismissal of its complaint and the grant of partial summary judgment to respondent on the question of appellant's alleged security interest in debtors' after-acquired market hogs. We affirm.

## FACTS

Leon and Marilyn Kelzer (hereinafter Kelzers or debtors) farm and raise livestock. The Kelzers secured business loans totalling approximately $67,550 with appellant State Bank of Young America (State Bank) during the 1980s. As consideration for those loans, State Bank took a security interest in all livestock owned or after-acquired by the Kelzers. The security interest was described in financing statements and perfected by filing on September 17, 1985.

The Kelzers also owed approximately $20,600 to respondent James P. Wagener for past sales of hogs. Wagener entered into an arrangement with the Kelzers to retire the debt by delivering approximately 162 feeder pigs to the Kelzers' farm, after which the Kelzers would keep, feed, and care for the pigs until they were ready for market. Wagener would then retrieve the hogs, bring them to a livestock broker for sale, and set-off the resulting profit against the Kelzers' debt. The debtors and Wagener reduced this agreement to writing on November 30, 1989, and included a clause stating:

> The title and ownership to said pigs shall remain in [Wagener] at all times and [the Kelzers] shall at no time obtain any rights, title, or ownership in said animals.

Wagener retrieved the pigs in the spring of 1990 and transported them to market for sale. Wagener received approximately $20,000 in total proceeds. He deducted his costs from the sale and credited the remaining amount toward the Kelzers' debt.

In the midst of caring for the pigs, the Kelzers filed for Chapter 12 bankruptcy on December 20, 1989. Appellant State Bank was named a Class D secured creditor with a claim for $67,500 secured in part by a truck and 242 hogs owned by the Kelzers. As of December 20, 1989, bank officers were aware the Kelzers claimed 162 other pigs belonged to Wagener. The Kelzers did not include these pigs as assets on their bankruptcy petition and State Bank made no claim to them in the bankruptcy action.

At the bankruptcy proceeding's conclusion on May 16, 1990, State Bank signed a stipulation, withdrawing its objections and agreeing to the Chapter 12 reorganization plan. Under the plan, State Bank was paid for the truck and 242 hogs, leaving a $28,088 unpaid balance on the Kelzers' debt.

State Bank sued Wagener to attach the proceeds allocated to the Kelzers' debt from sale of the 162 pigs. State Bank alleged Wagener wrongfully converted the bank's collateral arising out of the financing agreement clause covering the Kelzers' after-acquired livestock.

State Bank moved for partial summary judgment on the question of its security interest, reserving the damages question. The district court denied appellant's motion, finding that State Bank could not have a security interest in pigs to which the debtors never had any ownership or other rights. The district court concluded appellant failed to produce any evidence to con-

tradict Wagener's written agreement maintaining ownership and all other rights in the pigs, and thus, respondent was entitled to summary judgment. State Bank appealed to this court.

## ISSUE

Did the trial court err in finding that appellant had no security interest in the pigs held by debtors?

## ANALYSIS

■ Minnesota Rule of Civil Procedure 56.03 provides that where the record shows no genuine issue of material fact in dispute, either party is entitled to a summary judgment as a matter of law. On review of summary judgment, this court must determine whether any genuine issues of material fact are disputed and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The issue on appeal is exclusively one of law, and therefore this court is not bound by the district court's conclusion. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

■ Appellant acknowledges the Kelzers did not have ownership rights in the 162 hogs at issue. Rather, State Bank argues the Kelzers maintained some lesser status of rights in the hogs by virtue of the hogs' retention on the Kelzers' farm and the Kelzers' labor and feed used to raise the hogs to market fitness.

Minnesota has adopted article 9 of the Uniform Commercial Code to regulate secured transactions. In relevant part, the Code provides:

(1) * * * A security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) * * * the debtor has signed a security agreement which contains a description of the collateral and in addition * * *;

(b) value has been given; and

(c) the debtor has rights in the collateral.

Minn.Stat. § 336.9–203 (1990). The issue before the court is whether the Kelzers' "rights in the collateral" were sufficient to support the bank's security interest in the pigs.

The Eighth Circuit Court of Appeals addressed this precise question in *Rohweder v. Aberdeen Prod. Credit Ass'n,* 765 F.2d 109 (8th Cir.1985). In this case, the plaintiff owned a large stock of cattle and entered into a "share agreement" with the debtor. The debtor agreed to breed plaintiff's cows with his bulls, calve them out, and pasture and care for all the cows and calves. For this service, the debtor would receive a percentage of the calf crop and the option to purchase some of the cows at a future date. Rohweder delivered 710 cows to the debtor, who cared for them over the following months. Rohweder retained the bill of sale to all the cows, which were branded with his mark.

During execution of the agreement, debtor filed Chapter 11 bankruptcy. He had obtained loans with a credit association (PCA), which took a security interest in debtor's after-acquired livestock. Although debtor informed PCA that some of the cows belonged to Rohweder and were not part of the bankruptcy proceeding, it nonetheless sold the cattle and credited the proceeds toward debtor's bankruptcy account.

Rohweder filed suit against the PCA for conversion of his cattle, and the district court granted PCA's motion for directed verdict. On appeal, the Eighth Circuit reversed, stating:

[T]he transaction can be found to be a true bailment in which [debtor's] interest is that of a bailee. We are aware of no cases in which the interest of a genuine bailee was sufficient to support the attachment of a security interest and PCA has cited none. On the contrary, the cases have concluded that the security interest of a bailee's creditor does not attach to goods which are the subject of a bailment. * * * Furthermore, mere possession of the collateral or an unexercised option to purchase does not give

the debtor sufficient rights for a security interest to attach.

*Id.* at 112 (citations omitted).

A similar case was presented to the Oklahoma Court of Appeals where a feedlot owner's creditor claimed a security interest in livestock held by the feedlot owner for a third party. In *Nat'l Livestock Credit Corp. v. First State Bank of Harrah,* 503 P.2d 1283 (Okl.App.1972), the court rejected the creditor's claim for the "after-acquired" livestock because the debtor purchased the cattle for the third party and not himself, excluding the cattle from the provisions of the creditor's security agreement.

Both *Rohweder* and *Harrah* were cited by the bankruptcy court in *In re Cook,* 63 B.R. 789 (Bnkr.D.N.D.1986). This case also involved a claimed security interest in cattle owned by one party and held by a debtor at the debtor's feedlot. The court, citing the *Rohweder* decision, found that a true bailment does not grant a debtor sufficient rights to encumber property in a debtor's possession because the parties' intent is a crucial element in determining whether the holder of another's property has "sufficient rights" to pledge collateral. *Id.* at 796–97. Additionally:

> [T]he requirement of "rights in the collateral" illustrates the general principle that "one cannot encumber another man's property in the absence of consent, estoppel, or some other special rule." * * * Thus a debtor possesses sufficient rights in collateral if the true owner agrees to the debtor's use of the property as security or if the true owner is estopped to deny creation of the security interest.

*Id.* at 798 (citations omitted).

Kelzer and Wagener had a clear understanding, reduced to writing, that Wagener never forfeited any rights to the pigs. Wagener certainly never agreed to allow Kelzer to use the pigs as security. Therefore, it is clear that Kelzer never acquired sufficient rights in the collateral for the bank's interest to attach.

We adopt and apply the courts' reasoning in *Rohweder, Cook,* and *Harrah* to the case at hand. The fact that the hogs were retained on the Kelzers' farm and the Kelzers' labor and feed were used to raise the hogs to market fitness does not vest the Kelzers with any rights in those hogs sufficient to consider the livestock as collateral. This is especially true where the intent of the parties that Wagener was to retain ownership and control of the hogs was clear. The trial court was correct in granting summary judgment to Wagener and in dismissing State Bank's complaint.

## DECISION

A debtor does not hold rights in collateral sufficient to allow a creditor's security interest to attach where the collateral property at issue was given to the debtor as a bailee.

Affirmed.