**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3006

_____

| | |
|---|---|
| Stephen Anthony Bruening, Doing Business as Bruening Holding Company, and Nancy E. Bruening,<br><br>Debtors.<br>_____ | *<br>*<br>*<br>*<br>*<br>* |
| David C. Stover, Trustee,<br><br>Appellee,<br><br>v.<br><br>Jewett M. Fulkerson,<br><br>Appellant. | *  Appeal from the United States<br>*  District Court for the Western<br>*  District of Missouri.<br>*<br>*<br>*<br>*<br>*<br>* |

_____

Submitted:  February 14, 1997

Filed:  May 13, 1997

_____

Before  HANSEN  and  MORRIS  SHEPPARD  ARNOLD,  Circuit  Judges,  and
MELLOY,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

_____

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

Jewett M. Fulkerson appeals a district court decision affirming the judgment of a bankruptcy court in favor of a trustee who brought an action to recover $13,700 that the trustee alleged was a preferential transfer under 11 U.S.C. § 547(b)(2). We find that only $13,000 of the payment that Mr. Fulkerson received was a preferential transfer and thus we affirm in part and reverse in part the judgment of the district court.

## I.

Sometime prior to February, 1993, Mr. Fulkerson transferred, pursuant to an oral agreement, several dozen cattle to Stephen Bruening, who, with his wife, is the debtor in this case. Whether this transfer was pursuant to a sale of the cattle, or merely a bailment accompanied by a series of option contracts, is, for reasons that we shall explain, crucial to the case and is in dispute. There is no dispute, however, about the fact that the agreement anticipated payments of $22,500 a year from Mr. Bruening to Mr. Fulkerson, because Mr. Bruening signed to Mr. Fulkerson's order a series of notes.

Each note indicated a sum due, a due date, an interest rate, and a description, such as on the note due February 10, 1995, which read "3rd Payment on 100 Bred Heifers." Mr. Fulkerson testified that these notes merely reflected the fact that Mr. Bruening was entitled to purchase twenty-five cows a year from the hundred or so cattle for which he was caring. He said that the notes were drawn up on inappropriate forms that happened to be in his possession, and that the execution of the notes was an afterthought to provide their respective wives with some evidence of their agreement in the event something should happen to the two men. Mr. Fulkerson received a total of five payments in 1993 and 1994 that were consistent with the schedule indicated by the notes, the last of which, for $13,700, is the one at issue here.

A second difficulty in this case arises from the fact that the $13,700 payment was drawn not on Mr. Bruening's personal account but on the account of Bruening Holding Company ("BHC"), a company wholly owned by Mr. Bruening and his wife and which

did not file bankruptcy. That payment followed shortly on a transfer by Mr. Bruening of $13,000 from his personal account into the BHC account. A related factual dispute has to do with whether it was BHC or Mr. Bruening who owned (or had a bailee's interest in) the cattle.

There is no question that Mr. Bruening's interests were intermingled with the corporate interests in a very confusing way. He signed the notes personally, but testified that he thought that the company owned the cattle. He admitted, however, that "in the long run" the obligation on the debt was his personally. Mr. Fulkerson, although he argues on appeal that his dealings were with BHC alone, indicated in his testimony that he, in effect, equated BHC with Mr. Bruening. The cattle were listed on Mr. Bruening's bankruptcy filing. They also, apparently, were included in the security interest granted to Kearney Trust Company ("Kearney") when that company lent BHC money for cattle operations: It was Kearney that liquidated all of the livestock in Mr. Bruening's possession, including the cattle that Mr. Fulkerson had transferred to him, when BHC defaulted on that note.

## II.

## A.

The bankruptcy code provides that a trustee may recover a transfer of property made "on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). No such recovery is allowed, on the other hand, when the transfer was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor." 11 U.S.C. § 547(c)(1)(A). The bankruptcy court had to determine, therefore, whether the $13,700 that Mr. Fulkerson received was a payment on a promissory note for cattle bought in the past or a cash purchase of the cattle pursuant to an option contract.

The bankruptcy court found that it was the former. Mr. Fulkerson, contending that it was the latter, bases his appeal primarily on two related arguments: One, that because Mr. Bruening was permitted, under their agreement, to return cattle that he did not want, the arrangement must have been an option contract; and, two, that the sum of the evidence shows that the original intent of the parties was to create a bailment and option contract, not a sale.

The first point, Mr. Fulkerson appears to contend, establishes as a matter of law that the parties created an option contract and not a sale between them. We note, first of all, that the evidence is not conclusive that Mr. Bruening's ability to return the cattle was in fact part of the original understanding; indeed, Mr. Bruening's testimony suggests that it became part of the understanding between the two parties only after Mr. Fulkerson became aware of Mr. Bruening's financial difficulties. But assuming, arguendo, that this return provision was part of the original contract between the parties, Mr. Fulkerson is still unable to point to any case that holds that the existence of such a contractual provision, by itself, requires a court to conclude that the relevant arrangement was an option contract and not a sale. We do not think, moreover, that there is any such rule of law.

On the second point, we agree with Mr. Fulkerson that the parties' intent will determine how this business arrangement ought to be characterized. See Mo. Ann. Stat. § 400.2-401(1). But Mr. Fulkerson's testimony with regard to his intent in placing his cows with Mr. Bruening, although it is certainly credible on its face, is nevertheless not the only evidence for the trier of fact on this point. Evidence in conflict with Mr. Fulkerson's testimony included the existence of the notes, as well as the testimony of Mr. Bruening, who said that he had signed the notes in order "to purchase cattle," and that the payment of $13,700 to Mr. Fulkerson occurred because "we owed him for the cattle and we were due [to make] a payment." Mr. Bruening also listed, when he filed for bankruptcy, a debt to Mr. Fulkerson that was consistent with the schedule of the executed notes. Mr. Fulkerson himself mentioned in a letter to the bankruptcy court

that Mr. Bruening had purchased the cattle, and in his filings with the court he asserted "cattle sold" as the basis for his claim. On the basis of this record, we are hardly in a position to disturb the holding of the bankruptcy court on the factual question of whether the transfer was a sale or a bailment.

Mr. Fulkerson's reliance on our decision in Rohweder v. Aberdeen Prod. Credit Ass'n, 765 F.2d 109 (8th Cir. 1985), misses the mark. It is true that the Rohweder court had before it a case that, like ours, required a decision on the question of whether a transfer of cattle was a bailment or a sale. On a record much stronger than that in our case for the proposition that the transfer was a bailment, we held that a factual question existed and that a summary judgment in the district court, holding that the transfer was a sale, had to be reversed. Rohweder, then, for our purposes, merely stands for the unexceptionable proposition that factual disputes are to be resolved by the trier of facts.

B.

Having concluded that the bankruptcy court did not err in holding that the transfer of cattle to Mr. Bruening by Mr. Fulkerson was a sale and gave rise to a debt, the second question is whether the fact that BHC made the relevant payment on that debt, and not Mr. Bruening personally, stands in the way of the trustee's recovery.

The answer to this question depends on whether the $13,700 payment can correctly be said to be a transfer "of an interest of the debtor in property." 11 U.S.C. § 547(b). The bankruptcy code defines a transfer broadly to include "every mode, direct or indirect ... of disposing of or parting with property or with an interest in property." 11 U.S.C. § 101(54). It is undeniable that the $13,700 that Mr. Fulkerson received belonged, if only for the short interlude between Mr. Bruening's transfer and BHC's payment, to BHC. The trustee, of course, has no right to recover a payment by a co-obligor of a debtor on a note, or a payment by any third party for that matter, that pays down a debt of the debtor. That is because these payments, which would decrease the sum of the creditors' claims on the debtor, would have no effect on the estate of the

debtor. <u>Brown v. First Nat'l Bank of Little Rock, Ark.</u>, 748 F.2d 490, 491 (8th Cir. 1984) (<u>per</u> <u>curiam</u>).

To reach the $13,700 payment, then, requires that the corporate form be overlooked, or that the interests of the corporation and the principal be somehow equated. We are not persuaded that the law supports such an outcome. There seems to be nothing in the bankruptcy code itself that touches on the question. Under Missouri law, to ignore the corporate form under an "alter ego" theory requires not just a showing of complete control but at least some element of mischief in the corporate undertaking itself. <u>In re B. J. McAdams, Inc.</u>, 66 F.3d 931, 937 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 2546 (1996) (corporate entity may be rejected when "used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud"). The record shows that BHC kept separate accounts and records, and that it had corporate funds apart from the $13,000 that Mr. Bruening put in the account. There is no evidence that BHC was anything other than a legitimate enterprise set up to manage Mr. Bruening's cattle interests. The payment from BHC is therefore not recoverable by the trustee.

C.

We find, nevertheless, that the payment by Mr. Bruening into the corporate account is itself a voidable preference under 11 U.S.C. § 547(b). Mr. Fulkerson argues that the debt was BHC's and not Mr. Bruening's and therefore that the payment of $13,000 was not on account of an antecedent debt. This argument, if successful, might well lead, as the bankruptcy court indicated, to the conclusion that the payment was a fraudulent transfer for less than equivalent value under 11 U.S.C. § 548(a)(2)(A). But we think that the argument fails as a matter of law on the record before us. Because Mr. Bruening signed the relevant notes without any indication that he was doing so on behalf of BHC, there is no question that the obligation to Mr. Fulkerson was Mr. Bruening's personally. <u>Receivables Fin. Corp. v. Hamilton</u>, 408 S.W.2d 44, 46 (Mo. 1966); <u>see</u> <u>also</u> <u>United Sav. & Loan Ass'n v. Lake of the Ozarks Water Festival,</u>

Inc., 805 S.W.2d 350, 354-57 (Mo. Ct. App. 1991). We think that the record is clear, moreover, that the funds were earmarked from the first for Mr. Fulkerson, and that BHC was a mere conduit for them. The $13,000 payment to BHC is therefore voidable as a preferential transfer under 11 U.S.C. § 547(b)(2).

## III.

We therefore reverse the judgment of the district court as to the $700 of the transfer that constituted corporate funds. We remand the case to the district court for entry of a judgment consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.