**NATIONAL LIVESTOCK CREDIT COR-
PORATION, Appellant,**

v.

**FIRST STATE BANK OF HARRAH, Okla-
homa, and Floyd Oxford, Appellees.**

**No. 44744.**

Court of Appeals of Oklahoma,
Division No. 2.

Sept. 19, 1972.

Rehearing Denied Nov. 1, 1972.

Certiorari Denied Dec. 5, 1972.

William G. Davisson, Ardmore, and Clarence P. Green, Green & James, Oklahoma City, for appellant.

John C. Harrington, Jr., Lytle, Soule & Emery, Oklahoma City, for appellee First State Bank, Harrah, Okl.

Leslie L. Conner, James M. Little, and Leslie L. Conner, Jr., Conner, Little & Conner, Oklahoma City, for appellee Floyd Oxford.

BACON, Judge.

This appeal involves an action wherein two parties claim security interest in cattle and proceeds obtained by selling same. One party held a security agreement upon the specific cattle and the other party claimed it had a prior security interest in the cattle as a result of the "after-acquired property" provision in their security agreement on other cattle.

The record reflects one Bill Rowlett owned and operated a feed lot in Oklahoma County, Oklahoma. Mr. Rowlett also did custom feeding at the feed lot for other cattle owners. In December of 1967 and again in January of 1969, appellant (National Livestock Credit Corporation, hereinafter referred to as National) loaned Rowlett money, and he executed promissory notes, security agreements and financing statements. National perfected these instruments by recording them. The December 1967 financing statement listed the security to be:

"Cattle of every kind and description whether or not branded or marked."

Both security agreements contained the following language:

"All property similar to that listed in Items 1 and 2 above, which at any time may hereafter be acquired by the debtor, including but not limited to: All natural increase, additions, accretions and replacements of livestock, whether branded or marked in one or more of the above brands or marks, or branded in a different brand or mark, or unbranded or unmarked . . . ."

In October of 1969 Rowlett orally agreed with appellee (Floyd Oxford) to purchase 150 head of cattle for Oxford and place them in Rowlett's feed lot. Rowlett purchased the 150 head from National Feeder Service Corporation (a related company of appellant National) and placed the cattle in separate pens from all other cattle in the feed lot. Oxford examined the cattle at the feed lot on November 12, 1969, and gave Rowlett a check for $15,000. There is an invoice from National Feeder Service Corporation in the record dated November 13, 1969, for $17,432.45; and on November 15, 1969, Oxford gave Rowlett another check for $2,432.45, thus paying Rowlett $17,432.45. To cover those checks, Oxford borrowed $17,500 on November 14, 1969, from the First State Bank of Harrah, Oklahoma, (also appellee herein) hereinafter referred to as Bank, with Oxford listing the 150 head and other chattels as security for the loan.

Then in April of 1970, Oxford consigned 101 head of the cattle for sale by auction to Cassidy Commission Company and the 101 head brought $19,860.30. National learned of the sale and demanded the $19,860.30, taking the position that its 1967 and 1969 security agreements with Rowlett gave it a prior secured interest in the cattle due to the "after-acquired clause" previously herein quoted. Bank and Oxford took the position that National had no interest in the 150 head because they were not subject to the two security agreements executed by Rowlett, but were the separate property of Oxford. Cassidy Commission Company did not know to whom the $19,860.30 should be paid, so Cassidy filed suit in interpleader as stakeholder of the proceeds of the sale of the 101 head. The case was tried to the court without jury and judgment was rendered for Bank. National brings this appeal asserting the following two propositions:

"PROPOSITION I

"A perfected security interest with an after-acquired clause is binding on subsequent purchasers and incumbrancers who deal with after-acquired collateral of the type described.

"Since National had a perfected security interest in the heifers which was prior and superior to the rights of Bank and Oxford, it was error for the trial court

to rule that Bank and Oxford were entitled to the Interpleaded fund.

## "PROPOSITION II

"The description of collateral in a financing statement is sufficient if it describes the type of collateral. It need not specifically describe or identify each item."

Appellees' position on the other hand is to the effect that a perfected security agreement with an after-acquired clause "does not attach to property in which the debtor had no interest." We must agree with the trial court and the position of appellees under the facts of the present case. The Uniform Commercial Code's provisions pertaining to "after-acquired property" and "when security interest attaches," is 12A O.S.1971 § 9–204 which reads in part as follows:

"(1) A security interest cannot attach until there is agreement (subsection (3) of Section 1–201) that it attach and value is given *and the debtor has rights in the collateral.* It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.

"(2) . . .

"(3) Except as provided in subsection (4) a security agreement may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement.

"(4) No security interest attaches under an after-acquired property clause

(a) . . .

(b) to consumer goods other than accessions (Section 9–314) when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value.

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment. Laws 1961, p. 166, § 9–204." (emphasis ours)

The only possible way National could assert an interest in the 150 head would be by finding the cattle were Rowlett's after-acquired property. The trial court found Rowlett purchased the cattle for Oxford and not himself, thus the cattle would not be subject to the provisions of National's security agreement with Rowlett, which contained the after-acquired clause. The law quoted by National is all correct, but has no application to the present set of facts, unless Rowlett purchased the cattle for himself rather than for Oxford. Suffice it to say the record clearly contains sufficient evidence to support the judgment of the trial court in finding Rowlett purchased for Oxford and not himself. Even the purchase receipt (Exhibit O–1) given by National Feeder Service Corporation (again a subsidiary of National) states that the 150 head were sold to Bill Rowlett for the account of F. O. Oxford. We therefore conclude that Rowlett never acquired an interest in the cattle to the extent that they could be considered after-acquired property coming within the security agreements executed by Rowlett to National.

Thus, since Rowlett never acquired an interest in the 101 head, National's security agreements are of no effect as to the 101 head and therefore the trial court properly awarded the proceeds held by Cassidy Commission Company to Bank.

Affirmed.

BRIGHTMIRE, P. J., and NEPTUNE, J., concur.