Fred POTEET, Jr., et al., Appellants,

v.

WINTER GARDEN PRODUCTION CREDIT ASSOCIATION, Appellee.

No. 6521.

Court of Civil Appeals of Texas, El Paso.

Jan. 5, 1977.

Rehearing Denied Feb. 2, 1977.

Haley, Fulbright, Winniford, Bice & Davis, W. C. Haley, Waco, for appellants.

Jay R. Sorrell, Pearsall, for appellee.

## OPINION

PRESLAR, Chief Justice.

This case involves a contest between one who claims a security interest in after-acquired property, and one who claims ownership of the property because the debtor, as his agent, purchased it for him. In issue is the question of whether the debtor acquired an interest in the 254 cattle to which the security interest would attach. The trial Court found for the holder of the security interest. We affirm.

The debtor, Pat Wootton, operated a cattle feed lot. He fed out cattle for himself and others. Appellant, Fred Poteet, Jr., was one of the others in that cattle owned by him were fed out or fattened by Pat Wootton. About one-third of the cattle that passed through Wootton's feed lot were owned by him, and the other two-thirds by numerous other people in the

same arrangement as Fred Poteet, Jr. This controversy arose when Pat Wootton's feed lot was placed in receivership with some 4,000 cattle in his feed lot pens at the time. Fred Poteet claims ownership of 254 cattle located in pens numbered 7 and 8, while Appellee, Winter Garden Production Credit Association, claims a security interest in those cattle or the proceeds thereof. At all times pertinent, Appellee had on file in the county of Wootton's operations a financing statement. Among other things, its security agreement enumerated certain cattle and then provided "and all livestock hereafter acquired by Debtor, and all progeny, thereof, and proceeds thereof." It is under this security agreement that they claim a lien on the 254 cattle.

Appellant's basic position is that these were always Poteet's cattle and Wootton never had any interest in them. The arrangement was that Wootton would find cattle and buy them, pay for them himself, put them in a pen and brand them with Appellant's brand and notify or invoice Appellant and be reimbursed by Appellant for the purchase price. Payment to Wootton was by draft of Poteet on Waco Production Credit Association. He would then feed out or fatten the cattle for some 120 days, sell them and remit the proceeds to Poteet. His only charge for this operation was the custom feeding, that is, his charge for feeding out the cattle. The evidence is that this was a customary procedure used by feed lot operators engaged in custom feeding for others. Waco Production Credit Association is a party to the suit in that it advanced money to Fred Poteet to purchase cattle and pay for their feeding, and it had a security agreement covering cattle owned by Appellant Poteet.

The rights of the parties are governed by the provisions of the Texas Business and Commerce Code Annotated, hereinafter referred to as the "Code." Section 9.204 provides that a security interest cannot attach until (1) there is agreement that it attach, (2) value is given, and (3) the debtor has rights in the collateral, but that it attaches as soon as all those events have occurred,

unless explicit agreements postpone the time of attachment. *Clark v. Vaughn,* 504 S.W.2d 550 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.); *In re Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir. 1976, on rehearing en banc), cert. denied, —— U.S. ——, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976) (No. 75–1876), prior decision 483 F.2d 557, reversed and remanded by the Supreme Court, 416 U.S. 100, 94 S.Ct. 1626, 40 L.Ed.2d 79.

The controlling question here is whether the debtor Wootton ever acquired any interest or rights in the cattle to which the security interest could attach. Requirement number 1 above is satisfied by the agreement which we have mentioned. Requirement number 2, value, is met by Wootton's indebtedness to Appellee at the time involved; this pre-existing indebtedness constituted value under the Code, Sec. 1.201(44); *In re Samuels & Co., Inc.,* supra. The knotty question as to whether Wootton ever acquired any interest in the 254 cattle is determined on the basis that it boiled down to a fact issue presumably found in favor of Appellee by the trial Court; it must be upheld by us in the procedure in which this case comes for review.

This case was tried to the Court without a jury, and there are no findings of fact and conclusions of law; none were requested and none are filed. In the absence of findings of fact and conclusions of law, the judgment of the trial Court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Seaman v. Seaman,* 425 S.W.2d 339 (Tex. 1968). Also, it will be assumed by the appellate Court that every disputed fact issue that was involved in the case was found by the trial Court in such a way as to support the judgment rendered. *Construction and General Labor Union, Local No. 688 v. Stephenson,* 148 Tex. 434, 225 S.W.2d 958 (1950); 4 McDonald, Texas Civil Practice, Presumptions on Appeal, Sec. 16.10; *O'Neil v. Mack Trucks, Inc.,* 533 S.W.2d 832 (Tex. Civ.App.—El Paso 1975, rev'd on other grounds 542 S.W.2d 112 (1976).

The facts surrounding the purchase of these cattle by Wootton present conflicting

evidence as to whether he first bought them for himself. There is evidence that he paid for some cattle by his own personal check and some by draft drawn on the Appellee, and there is evidence that some were part of a larger group taken from one of his pastures and placed in pen 8. Appellants correctly say that they cannot be traced. Certainly, there is no proof that these specific cattle were intended by Wootton to be Poteet's at the time they were purchased. If they were not so bought, then title was at one time in Wootton and the security interest would attach. This case presents a stronger set of facts than the above cited case of *In re Samuels & Co., Inc.,* supra. There, a debtor operating under a security agreement bought cattle and paid for them with a worthless check. It was held that the interest of the seller in the cattle, which were delivered to the buyer, was subordinate to the interest of the holder of the perfected security interest; that the buyer's rights in the property, however marginal, were sufficient to allow attachment of a lien. Appellant relies on the case of *National Livestock Credit Corporation v. First State Bank of Harrah,* an Oklahoma case found at 503 P.2d 1283 (Ct. App. 1972). There, the Court found as a fact that the cattle purchased by the agent were for the principal. In the case before us, we have a presumed opposite finding.

By point of error No. 2, Appellants contend that Appellee has waived any security interest in the cattle involved. Here, again, it must be presumed that the trial Court in support of its judgment found against the Appellant on the facts which would constitute waiver. There being evidence of probative force to support that finding, it is binding on this Court under the authorities earlier noted.

All assignments of error have been considered and all are overruled. The judgment of the trial Court is affirmed.