RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

IN RE: LEE H. PURDY,

*Debtor*,

─────────────────────────────────

SUNSHINE HEIFERS, LLC,

*Appellant*,

*v.*

CITIZENS FIRST BANK,

*Appellee*.

No. 16-6381

───────────────

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:15-cv-00110—Joseph H. McKinley Jr., District Judge.

Appeal from the United States Bankruptcy Court
for the Western District of Kentucky at Bowling Green.
No. 12-11592—Joan A. Lloyd, Judge.

Argued:  July 26, 2017

Decided and Filed:  August 31, 2017

Before:  COLE, Chief Judge; BATCHELDER and MOORE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Michael D. Almassian, KELLER & ALMASSIAN, Grand Rapids, Michigan, for Appellant.  Scott A. Bachert, KERRICK BACHERT PSC, Bowling Green, Kentucky, for Appellee.  **ON BRIEF:**  Michael D. Almassian, Nicholas S. Laue, KELLER & ALMASSIAN, Grand Rapids, Michigan, for Appellant.  Scott A. Bachert, Ashley D. Gerughty, KERRICK BACHERT PSC, Bowling Green, Kentucky, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. On August 14, 2014, a panel of this court held that Citizens First Bank ("Citizens First" or "CFB") failed to demonstrate that the "Dairy Cow Leases" it had with farmer Lee Purdy ("Debtor") were actually security agreements in disguise. *Sunshine Heifers, LLC v. Citizens First Bank (In re Purdy)*, 763 F.3d 513, 521 (6th Cir. 2014). The case was subsequently remanded to the United States Bankruptcy Court for the Western District of Kentucky "for further proceedings consistent with this opinion." *Id.* On remand, the bankruptcy court determined that "all cattle sold at the auction in April 2014 were subject to CFB's security interest. Therefore, the Court determines that all the proceeds of the [bankruptcy] auction, less the Trustee's fee, the costs of care and feeding of the cattle and expenses related to the sale, are the property of CFB." *In Re Purdy*, No. 12-11592(1)(12), 2015 WL 5176580, at *15 (Bankr. W.D. Ky. Sept. 2, 2015). Sunshine Heifers, LLC ("Sunshine") appealed to the district court, which "affirm[ed] the Bankruptcy Court's decision that 'net sales proceeds, exclusive of all costs associated with the sale and care of the cattle sold, totaling $402,354.54 are awarded to Citizens First Bank.'" *Sunshine Heifers, LLC v. Purdy*, No. 1:15-cv-00110-JHM, 2016 WL 4392815, at * 5 (W.D. Ky. Aug. 15, 2016). Sunshine now appeals the district court's judgment and argues that the bankruptcy court deprived Sunshine of its right to a portion of the bankruptcy auction proceeds. Sunshine requests that we remand the case to the bankruptcy court and require the bankruptcy court to award to Sunshine $301,318.63 in proceeds from the bankruptcy auction. For the reasons stated below, we **AFFIRM**.

## I. BACKGROUND

### A. Factual History[1]

Lee Purdy operated his dairy farm in Barren County, Kentucky. In 2008, he entered into a loan relationship with Citizens First, using his herd of dairy cattle as collateral. Purdy refinanced his loan on July 3, 2009, executing an "Agricultural Security Agreement" in exchange for additional principal in the amount of $417,570. As part of the security agreement, Purdy granted Citizens First a purchase money security interest in "all . . . Equipment, Farm Products, [and] Livestock (including all increase and supplies) . . . currently owned [or] hereafter acquired . . . ." Three days later, Citizens First perfected this purchase money security interest by filing a financing statement with the Kentucky Secretary of State. Purdy and Citizens Bank executed two similar security agreements in August 2010 and May 2012. Citizens First perfected these purchase money security interests as well.

Shortly after refinancing his loan with Citizens First in 2009, Purdy decided to increase the size of his dairy-cattle herd. He contacted Jeff Blevins of Sunshine regarding the prospect of leasing additional cattle. Sunshine was amenable to the idea, and on August 7, 2009, Purdy and Sunshine entered into the first of five contracts, three of which are relevant here: (1) a July 21, 2011 agreement, involving fifty head of cattle; (2) a July 14, 2012 agreement, rolling up two prior agreements and involving 285 head of cattle; and (3) another July 14, 2012 agreement, involving 100 head of cattle.

Each of these agreements is titled a "Dairy Cow Lease," and under their terms, Purdy received a total of 435 cattle for fifty months in exchange for a monthly rent. The agreements prohibited Purdy from terminating the leases, and Purdy agreed to "return the Cows, at [his] expense, to such place as Sunshine designate[d]" at the end of the lease term. Additionally, Purdy guaranteed "the net sales proceeds from the sale of the Cows . . . at the end of the Lease term [would] be [a set amount between $290 and $300] per head (the 'Guaranteed Residual Value')." Purdy further promised to maintain insurance on the cattle, to replace any cows that

---

[1]Because the underlying facts of this dispute have not changed, we draw this factual history from our previous panel opinion in this case. *In re Purdy*, 763 F.3d at 516–17. We have deleted the record citations, but otherwise we directly quote our prior opinion.

were culled from the herd, and to allow Sunshine the right to inspect the herd. When the parties signed these contracts, they also executed security agreements, and Sunshine filed financing statements with the Secretary of State.

In the dairy business, farmers must "cull" a portion of their herd every year, replacing older and less productive cows with younger, healthier ones. Many times, dairy farmers will replace the culled cows with their calves. Purdy, in contrast, sold off the calves of Sunshine's cows and purchased more mature replacements. *See In re Purdy,* 490 B.R. 530, 534 (Bankr. W. D. Ky. 2013). This practice contravened the terms of the leases, but Sunshine was aware of Purdy's behavior and acquiesced in it. Nonetheless, the terms of the lease required Purdy to apply Sunshine's brand and a yellow ear tag to the original cows and their replacements. In contrast, Purdy applied a white ear tag to the cattle covered by Citizens First's security interest. *In re Purdy,* 490 B.R. at 535. By July 2012, Purdy had approximately 750 head of cattle on his farm. Of those cattle, 435 should have carried Sunshine's brand according to the terms of the leases. *In re Purdy*, 763 F.3d at 516–17.

**B. Procedural History**

In the fall of 2012, the price of cattle feed rose, and milk production became less profitable. Purdy responded by selling off cattle, including many bearing Sunshine's brand, at a faster rate. Unfortunately, Purdy could not keep his operation above water, and on November 29, 2012, he filed a voluntary petition for Chapter 12 bankruptcy relief, and the bankruptcy court issued an automatic stay, preventing the removal of assets from the farm. A week later, representatives of Citizens First and Sunshine inspected the 389 cattle still on the farm. Of the cows on the property, 289 had white ear tags (indicating that they were covered by Citizens First's security interest) and Sunshine's brand, 99 had only white ear tags, and one cow had neither a tag nor a brand. A short time later, another farmer returned forty-three cattle that had been taken in violation of the bankruptcy court's stay. Sunshine claimed that thirty-nine of those cattle bore Sunshine's brand.

Citizens First argued that Purdy owned all of these cattle and, therefore, that they were covered by the bank's perfected purchase money security interest. Sunshine contended that it

maintained ownership of the cattle, that Purdy had only a leasehold interest in the cattle, and therefore that the cattle fell outside of Citizens First's security interest. Both Citizens First and Sunshine filed motions in the bankruptcy court for relief from the stay preventing the removal of the livestock. 763 F.3d at 517.

On January 22, 2013, the bankruptcy court held a hearing on various motions. The dispute between Citizens First and Sunshine turned on whether the leases between Purdy and Sunshine were true leases or disguised security agreements. The bankruptcy court issued its decision on March 1, 2013, finding that

> The original term of the Lease was for 50 months. Clearly, 50 months is longer than the economic life of the goods [the cows]. Uncontradicted testimony indicated that a dairy herd is culled annually at an approximate rate of 30 percent. Within three years an entire herd is extremely likely to have been entirely replaced and certainly before the end of 50 months. Because [Purdy] met this term of the statute, the transaction is a *per se* security agreement and the Court's analysis ends here.

*In re Purdy,* 490 B.R. at 536. Consequently, the bankruptcy court determined that Citizens First's "prior perfected liens attach[ed] to all cows on [Purdy's] farm on the date the Petition was filed," and it denied Sunshine's motion to lift the stay. *Id.* at 540. The bankruptcy court eventually granted Citizens First relief from the stay, however, and the bank foreclosed on the herd. Citizens First auctioned the cattle for $402,353.54, and the bankruptcy trustee awarded these proceeds to Citizens First, which applied them toward Purdy's outstanding debt. 763 F.3d at 517–18.

Sunshine appealed to the federal district court nine days after the auction sale. Because the cattle had already been auctioned, Sunshine requested a percentage of the sale proceeds equivalent to its share of the cattle sold. Ultimately, the district court affirmed the bankruptcy court's decision on September 25, 2013. 763 F.3d at 518.

In the first appeal to this court, we reversed and remanded to the bankruptcy court because Citizens First "failed to demonstrate that the 'Dairy Cow Leases' were actually security agreements in disguise." *In re Purdy*, 763 F.3d at 521. Following a hearing, the bankruptcy court on remand concluded that "CFB's security interest attached to all of these cattle before

Sunshine ever acquired any rights in the cattle" and "that all cattle sold at the auction in April 2014 were subject to CFB's security interest. Therefore, the Court determines that all the proceeds of the auction, less the Trustee's fee, the costs of care and feeding of the cattle and expenses related to the sale, are the property of CFB." *In re Purdy*, 2015 WL 5176580, at \*14–15.

Sunshine appealed the bankruptcy court's final order to the United States District Court for the Western District of Kentucky. On appeal, the district court determined that: (1) the bankruptcy court did not violate this court's mandate by holding an evidentiary hearing on the question of ownership; and (2) the bankruptcy court's factual findings about ownership were not clearly erroneous. *Sunshine Heifers, LLC*, 2016 WL 4392815, at \*2–4. The district court affirmed the bankruptcy court decision in its entirety, including the award of $402,354.54 to Citizens First. *Id.* at \*5. Sunshine now appeals to this court, and argues that this court's previous opinion entitled Sunshine to at least a portion of the auction's proceeds.

## II.  DISCUSSION

### A.  Standard of Review

When an appeal is taken from a district court's review of a bankruptcy court decision, "we directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision." *Barlow v. M. J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 607 (6th Cir. 2000). We "accord[ ] discretion in reviewing only the original bankruptcy court findings, not those included in the decision rendered by the district court." *Id*. In reviewing the decision of a bankruptcy court, we review conclusions of law de novo and factual findings for clear error. *Id.* When there is a challenge to a lower court's interpretation of our mandate, we review that purely legal issue de novo. *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003).

### B.  The Bankruptcy Court Complied With This Court's Mandate

Before we visit the merits of this appeal, we must address Sunshine's contention that "[t]he Bankruptcy Court erred when it clearly violated the 'mandate rule,' awarded Sunshine

nothing on remand, and held an evidentiary hearing on the issue of ownership." Appellant Br. at 15. Instead, Sunshine believes that "the Bankruptcy Court, in accordance with the Sixth Circuit's remand, was required to enter an order awarding Sunshine $301,318.63 from the cattle auction proceeds." *Id*. Sunshine specifically argues that: (1) we expressly determined that Sunshine Heifers was entitled to approximately $309,000 from the bankruptcy auction proceeds; (2) to the extent the ownership issue was not expressly decided, we implicitly decided the issue; and (3) our remand order was so narrow that it precluded the bankruptcy court from considering the issue of ownership. Appellant Br. at 17, 20, 22.

The bankruptcy court phrased the issue before it on remand as "whether the 415 head of cattle sold at the auction by the Trustee were cattle subject to the Dairy Cow Leases or whether the cattle were owned outright by the Debtor and subject to CFB's security interest." *In re Purdy*, 2015 WL 5176580, at *6. The bankruptcy court ultimately concluded "that all cattle sold at the auction in April 2014 were subject to CFB's security interest. Therefore, the Court determines that all the proceeds of the auction, less the Trustee's fee, the costs of care and feeding of the cattle and expenses related to the sale, are the property of CFB." *Id*. at 15.

"When a superior court determines the law of the case and issues its mandate, a lower court is not free to depart from it." *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 986 (6th Cir. 2006). We have previously held that "[t]he mandate rule is a specific application of the law of the case doctrine." *Id.* (citing *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2003)). "The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *Id.* "In determining whether the district court violated the law of the case doctrine or the mandate rule, we must consider: a) whether the [ ] issue was expressly or impliedly decided by this court in [the first appeal], and b) whether this court's mandate to the district court was so narrow in scope as to preclude the district court from considering the [ ] issue." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). On appeal, an appellate court may determine the law of the case either explicitly or by implication. *Waste Mgmt. of Ohio*, 169 F. App'x at 986. A non-exhaustive list of circumstances under which a prior appeal may resolve an issue implicitly includes: "(1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior

decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated." *Id.* (quoting *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1036 (10th Cir. 2000)). Narrow exceptions to the law of the case doctrine may apply when "the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice." *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 766–67 (6th Cir. 1989) (quotation marks omitted).

Sunshine's contention that the bankruptcy court violated our mandate on remand rests on Sunshine's interpretation of two sentences from our prior opinion. In reversing and remanding this case to the bankruptcy court, we stated that "[o]wnership of this herd—in our view—is a significant asset, and thus, we hold that Sunshine retained a meaningful reversionary interest." *In re Purdy*, 763 F.3d at 521. We also stated that "[i]f the agreements are true leases, then Sunshine has a reversionary interest in 435 head of cattle and is entitled to approximately $309,000 from the cattle auction." *Id.* at 518. Sunshine argues that these two sentences explicitly decided the ownership issue in its favor, and that if they did not, we implicitly decided the issue because it was a necessary step and closely related to the true lease or disguised security agreement distinction. Appellant Br. at 20.

We conclude that the bankruptcy court's decision to hold an evidentiary hearing on the issue of ownership did not contravene our mandate because we neither explicitly nor implicitly decided the issue of ownership. Although we said that Sunshine may have a reversionary interest and an entitlement to auction proceeds, we were simply referring to a statement from Sunshine's brief. *See In re Purdy*, 763 F.3d at 518. This single sentence upon which Sunshine's argument rests was extracted from an explanatory portion of the opinion—it was not a legal analysis that was critical to our holding. Our final conclusion was only that "Citizens First has failed to demonstrate that the 'Dairy Cow Leases' were actually security agreements in disguise." *Id.* at 521. At no point in the opinion did we determine which, if any, of the cattle were owned by Sunshine and therefore subject to the Dairy Cow Leases. We therefore conclude that we have not previously decided the issue of ownership.

The bankruptcy court held a hearing on the question of ownership because it sought to determine "ownership of the cattle on the Debtor's dairy farm at the time of the auction and whether any of the cattle sold were owned by the Debtor, if so, how many and whether any of the cattle were under lease from Sunshine and if so, how many." *In re Purdy*, 2015 WL 5176580, at \*3.  The bankruptcy court found our remand to be a "general remand" and not the narrow limited remand suggested by Sunshine. *Id.* at \*4.  We agree.  "In the absence of an explicit limitation, the remand order is presumptively a general one." *Owner-Operator Independent Drivers Assoc., Inc. v. Comerica Bank*, 562 F. App'x 312, 331 (6th Cir. 2014) (quoting *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997)).  By contrast, "[l]imited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *Id.* (quoting *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)).  Our previous opinion did not explicitly outline the issues to be addressed by the lower court, and it did not create a narrow framework within which the court was required to operate.  We required only that further proceedings be consistent with our opinion.  We therefore conclude that the remand was general and that it was not error for the bankruptcy court to hold an evidentiary hearing on the issue of ownership.

Additionally, as Citizens First notes, "[t]he proceeds from the sale and the distribution of the same were not before the appellate court because they were not determined by the lower [c]ourt.  The sale occurred while the appeal was pending." Appellee Br. at 40.  Because the issue of ownership was not originally decided by the bankruptcy court, it was not before us during the first appeal.  The question of ownership was also not so closely related to our previous decision about whether the agreements were true leases or security interests that the issue was impliedly decided during the initial appeal.  For the foregoing reasons, we conclude that the bankruptcy court's decision to hold an evidentiary hearing on the question of ownership was consistent with our prior opinion and therefore not a violation of the mandate rule.

## C. The Bankruptcy Court's Factual Findings Are Supported By The Record

Sunshine next argues that the bankruptcy court's factual findings that Purdy mass-branded all of the cattle on his farm and that he sold all of Sunshine's cattle before the bankruptcy petition date were clearly erroneous.  Appellant Br. at 23, 30.  Sunshine takes issue

with the bankruptcy court's decision to credit Purdy's testimony that all of the cattle on his farm were branded because Sunshine finds Purdy's testimony "so incoherent and implausible on its face that a reasonable fact finder would not credit it.  The entire record reveals overwhelming evidence that at all times, certain cattle on Debtor's farm were branded SSH and other cattle did not bear a brand." *Id.* at 25.  With respect to the bankruptcy court's finding that Purdy had sold all of Sunshine's cattle before the bankruptcy petition date, Sunshine argues that the bankruptcy court's finding "is inconsistent and irreconcilable with its previous opinion and findings of fact.  Simply put, the Bankruptcy Court made inconsistent factual findings regarding the sale of Sunshine's cattle in September and November 2012." *Id.* at 31.

The bankruptcy court made a number of factual findings regarding ownership, including: (1) that Purdy had a single bank account that was held with Citizens First, the secured creditor; (2) that all of the proceeds from his milking operation went into the account with Citizens First; (3) that all of the funds Purdy received from selling calves and culling cattle went into the same account; (4) that any money derived from the sale of Sunshine's cattle under the leases was comingled with funds that were derived from Purdy's dairy operation and subject to Citizens First's security interest; (5) that the record included dozens, if not hundreds, of checks showing purchases and sales of cattle through Purdy's Citizens First account; and (6) that although Citizens First knew that Purdy had cattle under lease with Sunshine, there was no record evidence that Citizens First was aware or that it consented to its collateral being used in the Citizens First account to purchase Sunshine cattle.  After assuming, consistent with our prior opinion, that the leases were true leases, the bankruptcy court concluded based on the testimony elicited at the hearing that Citizens First's security interest attached to all of the auctioned cattle before Sunshine acquired any rights to the cattle. *In re Purdy*, 2015 WL 5176580, at *14.

We affirm the bankruptcy court's factual findings because they were not clearly erroneous.  "In a bankruptcy proceeding, the bankruptcy judge is the finder of fact." *Onkyo Europe Elec. GMBH v. Glob. Technovations Inc. (In re Glob. Technovations Inc.)*, 694 F.3d 705, 714 (6th Cir. 2012).  The bankruptcy court reviewed a substantial record, conducted an evidentiary hearing, and elicited testimony from Purdy, Jeff Blevins from Sunshine Heifers, various farmers including Kendall Branstetter and Danny Layton, representatives from Citizens

First, and the auctioneer. The bankruptcy court's determination that the branding evidence was inconclusive was based on the fact that Purdy testified to having "over-branded" the cattle, regardless of the cattle's ownership. The bankruptcy court, upon hearing this and other evidence, determined that the branding evidence was therefore not probative on the issue of ownership. The bankruptcy court also concluded that Purdy sold all of the Sunshine cattle before the bankruptcy petition date. Purdy testified that he sold 250 cattle, the majority of which were Sunshine cattle, sometime between September and November 2012. We have conducted an exhaustive search of the record and find no credible record evidence that suggests that the bankruptcy court's interpretation of the record was clearly erroneous. Given the bankruptcy court's proximity to the facts and the testimony, and because the factual record supports its conclusion, we conclude that the bankruptcy court's factual findings on ownership were not clearly erroneous, and we affirm.

## D. The Bankruptcy Court Correctly Determined That Kentucky Revised Statute § 253.060 Did Not Apply to Sunshine's Brand

Sunshine next argues that the bankruptcy court erred when it determined that the Kentucky Brand Statute, Ky. Rev. Stat. Ann. § 253.060 (West 2017), did not apply to Sunshine branded cattle. Appellant Br. at 31. Specifically, Sunshine argues that: (1) the bankruptcy court was required to use the date of the auction to determine ownership under the statute; (2) the bankruptcy court erred in relying on Purdy's testimony that at one point all the cattle on his farm were branded Sunshine Heifers; and (3) Sunshine's brand is prima facie evidence of ownership, regardless of timing, because the brand was registered.

Citizens First responds that "Sunshine applied for application to the state brand register on December 20, 2012, approximately one month AFTER [sic] the Debtor filed his bankruptcy petition," and that "Sunshine's post-petition recording of its brand does not entitle Sunshine to the prima facie protection offered by KRS 253.060." Appellee Br. at 36. Citizens First further argues that "there was sufficient evidence to rebut any prima facie evidence presumed by the statute, even if such presumption applied," because Purdy, "culled cattle at a rate of 30%, sold more cattle than usual in the fall of 2012, the majority of the cattle sold in the fall of 2012 were

Sunshine cattle, the debtor over branded cattle, [and] leased cattle and replacement were purchased with funds from the debtor[']s account at CFB." *Id.* at 38.

The bankruptcy court determined that Kentucky Revised Statute § 253.060 did not apply to Sunshine's brand. Ky. Rev. Stat. Ann. § 253.060 states:

> Brands appearing in the current edition of the state report, or supplements thereto, shall be prima facie evidence of ownership and take precedence over brands of like and kind should the question of ownership arise. An owner whose brand does not appear in the state report, or a supplement thereto, shall produce evidence to establish his title to the property in the event of controversy.

Ky. Rev. Stat. Ann. § 253.060 (West 2017). We review questions of statutory interpretation de novo, *N.W. ex rel. J.W. v. Boone Cty. Bd. of Educ.*, 763 F.3d 611, 615 (6th Cir. 2014), and we review the bankruptcy court's factual findings for clear error, *In re Glob. Technovations Inc.*, 694 F.3d at 715.

The record indicates that Sunshine applied to register its brand with the state brand register on December 20, 2012, nearly one month subsequent to Purdy's filing his bankruptcy petition, and Sunshine's brand appeared in the state report on January 2, 2013. The bankruptcy court concluded that "in order for Sunshine to be able to rely exclusively on KRS 253.060 in support of its ownership claim, it could only apply to those cattle branded after the date of the registration of the brand. There is no reliable evidence of record as to how many head were branded with the SSH brand after January 2013 . . . ." *In re Purdy*, 2015 WL 5176580, at *11. The bankruptcy court was correct to conclude that the Kentucky Branding Statute provides Sunshine no relief because the record is devoid of facts regarding how many of head of cattle were branded with the Sunshine brand after the Sunshine brand appeared in the state report. Even if we determined that the bankruptcy court's application of the facts to the Kentucky statute was clearly erroneous, any prima facie evidence of Sunshine's ownership that the statute could provide was rebutted by Purdy's testimony regarding his culling of the cattle, over-branding the cattle, and purchasing replacement cattle using the Citizens First account. We therefore conclude on de novo review that the bankruptcy court correctly interpreted the statute and that its application of the facts to the statute was not clearly erroneous.

**E.  Citizens First Met Its Burden Of Proof**

Sunshine's final argument is that Citizens First failed to prove by a preponderance of the evidence that Purdy owned all of the cattle that were sold at auction.  Appellant Br. at 37.  Sunshine argues that:  (1) Citizens First produced no evidence of ownership and that Sunshine produced the strongest evidence of ownership; (2) the bankruptcy court erred in determining that Citizens First's security interest attached to all of the cattle that were sold at auction; (3) Citizens First's security interest is subject to Sunshine's ownership interest pursuant to Articles 2A and 9 of the Uniform Commercial Code ("UCC"); and (4) Citizens First's security interest did not attach to Sunshine's branded cattle because Sunshine is not estopped and did not consent to its cattle being pledged as collateral.  Appellant Br. at 37–56.  Sunshine further argues that the bankruptcy court erred in relying on a South Dakota case, *Brown v. United States*, 622 F. Supp. 1047 (D.S.D. 1985).

The disputed cattle are 288 cattle that were branded before Purdy filed his bankruptcy petition.  The bankruptcy court concluded that "since both CFB and Sunshine are making affirmative claims to the proceeds of the cattle, both parties bear the burden of proof on their claims."  *In re Purdy*, 2015 WL 5176580, at *5.  The bankruptcy court held that Sunshine failed to meet its burden to prove that it owned the cattle because, as discussed *supra*, the branding evidence was unreliable and Purdy's testimony was credible and not rebutted.  The bankruptcy court further relied on the fact that evidence regarding the "use of commingled funds in the CFB account served to establish Debtor's rights in the cattle sufficient for CFB's lien to attach."  *Id.* at *13.  The bankruptcy court concluded that although "CFB did indeed know that Debtor had cattle under lease with Sunshine . . . there was no evidence that CFB was aware or that it ever consented to the use of its collateral in the CFB account to fund the purchase of those cattle."  *Id.*  This, according to the bankruptcy court, was "the critical point where Debtor acquired rights in the collateral sufficient for CFB's security interest to attach to those cattle."  *Id.*

We find no reason to disturb the bankruptcy court's conclusion that Citizens First met its burden on the question of interest and ownership.  Although the parties dispute before us the applicability of UCC Articles 2A and 9, we conclude that neither article is dispositive in this case because the question before us is whether Purdy had rights in the collateral, an issue that neither

of the cited UCC sections answers. What we do conclude is that the bankruptcy court did not err in concluding that a creditor's interest in after-acquired property attaches at the point that the debtor used the creditor's funds or funds constituting a part of the creditor's collateral to acquire the property. In this case, Citizens First's interest in the cattle attached as soon as Purdy used funds comingled with the Citizens First account to purchase the Sunshine cattle.

Sunshine takes issue with the bankruptcy court's reliance on *Brown v. United States*, 622 F. Supp. 1047, and the bankruptcy court's adoption of Citizens First's position that *Brown* stands for the proposition that the "outward appearance of the debtor's rights of ownership and control in the collateral . . . determines whether attachment of the security interest is effective and not the rights of the party who may have title to the collateral." *In re Purdy*, 2015 WL 5176580, at *12 (quotation marks omitted). Though not binding on the courts of the Sixth Circuit, we find no reason that the bankruptcy court's reliance on *Brown* was in error or otherwise in conflict with the cases of our Circuit. *Brown* involved a factual scenario similar to the one before us: a debtor used funds commingled with his creditor's funds to purchase after-acquired livestock. The *Brown* court concluded that because of the commingling of funds, the third party's ownership interest did not extinguish the creditor's security interest because the interest attached to all of the after-acquired livestock.

We similarly find no error in the bankruptcy court's decision not to rely on two cases urged by Sunshine, *National Livestock Credit Corp. v. First State Bank of Harrah*, 503 P.2d 1283 (Okla. Ct. App. 1972), and *In re Cook*, 63 B.R. 789 (Bankr. D.N.D. 1986), because, as the bankruptcy court properly concluded, neither case involved the type of comingling of funds that was essential to the bankruptcy court's conclusion in this case. We therefore conclude that the bankruptcy court did not commit error in finding that Citizens First met its burden of proof on the issues of interest and ownership and that Sunshine did not.

### III. CONCLUSION

Our first remand in this case was a general remand which left open the question of ownership. Accordingly, we conclude that the bankruptcy court did not contravene our mandate by holding a hearing on the question of ownership. Although the facts of this case are

complicated and both parties may reasonably claim facts in their favor, we conclude that the bankruptcy court thoroughly reviewed and appropriately considered all of the relevant facts, its interpretation of the law was correct, and its application of the law to the facts was not clearly erroneous. Therefore, for the reasons set forth above, we **AFFIRM** the bankruptcy court's decision.